**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

v.                                             CASE NO: 8:20-cr-138-CEH-JSS

DILSON DANIEL ARBOLEDA
QUINONES

_____

## ORDER

This cause comes before the Court on the Report and Recommendation (Doc.

150), issued by Magistrate Judge Julie S. Sneed.  In the Report and Recommendation,

Magistrate Judge Sneed recommends Defendant Dilson Daniel Arboleda Quinones's

("Arboleda Quinones" or "Defendant") Motion to Suppress Statements (Doc. 53) be

denied. All parties were furnished copies of the Report and Recommendation and

were afforded the opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). On

January 5, 2021, Arboleda Quinones filed his "Initial Objection to the Magistrate

Judge's Report and Recommendation on his Motion to Suppress." Doc. 158. On

March 4, 2021, Arboleda Quinones filed a Supplemental Objection. Doc. 190. Upon

consideration of the Report and Recommendation, the Objections, the Supplemental

Objection, and upon this Court's independent examination of the file, it is determined

that the Objections should be overruled, the Report and Recommendation adopted,

and the Defendant's Motion to Suppress Statements be denied.

## I.    BACKGROUND

A March 19, 2020 indictment charged Arboleda Quinones and two co-defendants (collectively "Defendants") with possession and conspiracy to possess with intent to distribute 5 kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), 18 U.S.C. §§ 2 and 21, and 21 U.S.C. § 960(b)(1)(B)(ii). Doc. 1. The charges arose after Arboleda Quinones and his co-defendants were interdicted in international waters of the Eastern Pacific Ocean by the United States Coast Guard on March 10, 2020, and a search of their go fast vessel ("GFV") led to the discovery of 430 kilograms of cocaine hidden under false decking of the GFV. Docs. 120-1 at 1–2; 124 at 142–43.

After the interdiction, Arboleda Quinones and the other members of the GFV were treated as detainees and taken aboard the United States Coast Guard Cutter *Mohawk* ("*Mohawk*"). Docs. 120-1; 121-2. Defendants were medically screened. Docs. 121-3; 123 at 208. Arboleda Quinones was provided a Tyvek suit, open sandals, and two blankets. Docs. 125 at 62–65; 123 at 206. Arboleda Quinones and his co-defendants were housed on the deck of the *Mohawk* under an all-weather tent. Doc. 123 at 206. Within the tent, Defendants slept on plastic platform cots that were six inches from the deck. *Id.* Defendants were secured using twenty-foot chains connecting an ankle shackle to the deck. Doc. 125 at 66. Defendants were restrained by shackles at all times during their detention except for showering, bathroom breaks, and supervised breaks. Doc. 123 at 209. While on the *Mohawk*, Arboleda Quinones was provided hydrocortisone cream for skin irritations, ibuprofen for pain, and senna tabs for constipation. Doc. 121-3. The medical staff administered medication when

Arboleda Quinones's eye began to swell. *Id.* His medical condition and treatment were tracked on a chronological record of medical care log. *Id.*

Detained on the *Mohawk* for eighteen days, Defendants were thereafter transferred to the Coast Guard Cutter *Hamilton* ("*Hamilton*"), where they were held for another five days until their arrival in Port Everglades, Florida on April 3, 2020. Docs. 120-4; 121-2. Arboleda Quinones's shackles were removed to permit him safely to disembark the vessel, but placed back on, along with his hands secured in front of him, for his transport by van to the Middle District of Florida. Doc. 124 at 147–48. Defendants were loaded into an air-conditioned van operated by Homeland Security and transported to a detention center in the Middle District of Florida known as the Panama Express Strike Force ("PanEx") facility. *Id.* at 151–52. Agents Ramirez and Lima testified that Arboleda Quinones was provided food on the drive, and they were under the impression the van made one stop for a restroom break. *Id.* at 149–50. In contrast, Arboleda Quinones testified he received no food or bathroom breaks during the trip to Pinellas County. Doc. 125 at 75. Defendants arrived at the PanEx facility later the same day. *Id.* Upon arrival, Defendants were provided food, water, and access to a restroom. *Id.* at 76, 183. The Defendants were then questioned in separate rooms. *Id.* at 183.

Questioned at approximately 2:00 p.m. on that date, Arboleda Quinones was the last of the Defendants to be interviewed. Doc. 124 at 189. He was taken into a small room with a steel table, three chairs bolted to the floor, and no windows. *Id.* This

was typical of the eight to nine interview rooms at the PanEx facility. *Id.* at 190. Agent Lima, who speaks Spanish, conducted the interview of Arboleda Quinones in Spanish and testified he had no difficulty communicating with Defendant. *Id.* at 192–93. Defendant responded to Agent Lima's questions consistent with someone who understood what was being asked. *Id.* at 193. Agent Lima testified that Arboleda Quinones did not appear malnourished or in poor health. *Id.* at 190. He testified that Arboleda Quinones was polite and calm, did not complain of fatigue, and did not voice health concerns, and there were none that were apparent. *Id.*

Agent Lima reviewed a consular notification form with Arboleda Quinones who indicated his understanding and elected to have the Columbian consulate notified of his detention. *Id.* at 194–96; Doc. 121-4 at 3. Next, Agent Lima reviewed a recording form with Arboleda Quinones who declined to have the interview recorded as indicated by his signature on the form. Docs. 124 at 198; 121-4 at 2. Agent Lima then reviewed the advice of rights form which included a recitation of a defendant's *Miranda*[1] rights. Docs. 124 at 199–200; 121-4 at 1. The form included a hand-written time of 2:12 p.m. at the top of the form and 2:15 p.m. at the bottom. Doc. 121-4 at 1. Agent Lima testified he believed his discussion about the form with Arboleda Quinones lasted three minutes. Defendant, Agent Lima, and Agent Kane signed the form in which Arboleda Quinones consented to be interviewed. *Id.* After Arboleda Quinones signed the form, Agent Lima questioned him for about an hour. Doc. 124

---

[1] *See Miranda v. Arizona*, 384 U.S. 346 (1966).

at 202. Agent Lima told Defendant that regardless of what takes place in the interview that Defendant would be permitted to call his family to let them know he was alive and where he was. *Id.* Defendant was permitted to make that call. *Id.* at 203. Defendant initially claimed to have been kidnapped but then he recanted that story. Doc. 125 at 43–45. According to Agent Lima, Arboleda Quinones never asked for a lawyer during the interview. Doc. 124 at 201. Defendant disputes this. Doc. 53 at 5.

On June 15, 2020, Arboleda Quinones moved to suppress all statements he made to law enforcement on or after March 11, 2020. Doc. 53. The Government filed a response in opposition. Doc. 67. The Magistrate Judge held a hearing on the motion to suppress and other motions on October 13, 14, and 15, 2020.[2]

A.    *Arboleda Quinones's Motion to Suppress Statements*

Arboleda Quinones moves to suppress any and all statements he made to law enforcement on or after March 11, 2020, because his statements were not made voluntarily, intelligently, or knowingly. Doc. 53. He further contends that he did not validly waive his rights under *Miranda* or the Fifth and Sixth Constitutional Amendments. According to Arboleda Quinones, when he was being interrogated, he was terrified, physically and mentally exhausted, and ailing from the month on the open ocean and the days without food before his capture. *Id.* at 5. Arboleda Quinones

---

[2] Arboleda Quinones moved to sever his motion to suppress from being heard at the same time as the Defendants' joint motions to dismiss because the presence of the co-defendants would have a chilling effect on Arboleda Quinones's testimony. Doc. 106. The Magistrate Judge granted, in part, the motion to sever to the extent that testimony related to the motion to suppress was to be conducted outside the presence of the co-defendants. Doc. 110.

argues he was afraid of U.S. prisons and jails, worried for his mother and family, and pressured by law enforcement to speak to get himself out of trouble. *Id.* He further contends that when asked if he wanted a lawyer, he responded that he did. *Id.* Accordingly, he asserts any statements attributable to him were involuntary and must be excluded.

### B.     *The Government's Response*

The Government opposes the motion to suppress, arguing that Arboleda Quinones made a valid waiver of his *Miranda* rights and decided to make a statement without an attorney. Doc. 67. In support, the Government submits that there is no evidence that Arboleda Quinones was coerced. He was not handcuffed during his interview. He had access to food, water, and a restroom. The FBI Notification of Rights form was reviewed and signed in Spanish and explicitly states he is available to answer questions without the presence of an attorney. Further, the Government states that during his days at sea, Arboleda Quinones and the other Defendants were provided appropriate accommodations, including being allowed to brush their teeth daily, shower, use the bathroom, and were fed three meals per day. Thus, the Government argues there is no evidence of mistreatment to support a claim of coercion.

### C.     *The Magistrate Judge's Findings and Recommendations*

At the evidentiary hearing on Arboleda Quinones's Motion to Suppress Statements, the Magistrate Judge heard testimony from United States Coast Guard Chief Boatswain's Mate Jeremy Swearer ("Chief Swearer"), United States Coast

Guard Maritime Enforcement Specialist Luis Saenz ("Officer Saenz"), United States Coast Guard Lieutenant Kyle Pearson ("Lieutenant Pearson"), United States Drug Enforcement Administration Special Agent Jose Ramirez ("Agent Ramirez"), United States Federal Bureau of Investigation Special Agent Luis C. Lima ("Agent Lima"), and Defendant Arboleda Quinones. Additionally, the Government entered into evidence, without objection from Arboleda Quinones, several exhibits, including a map showing the approximate location of the vessel's interdiction (Doc. 121-1), a detainee log (Doc. 121-2) and medical history log (Doc. 121-3) maintained by the United States Coast Guard during Arboleda Quinones's detention, documents signed by him while at the PanEx facility (Doc. 121-4), the Alpha Report prepared by the Coast Guard during the interdiction (Doc. 121-5), and the Victor Report prepared during the interdiction (Doc. 121-6). The Magistrate Judge received into evidence six exhibits from Arboleda Quinones including an activity log from the *Mohawk* (Doc. 120-1), a Requisition and Invoice/Shipping document (Doc. 120-2), photographs of Defendants and their belongings (Doc. 120-3), a Drug Enforcement Administration Report of Investigation (Doc. 120-4), a consulate request form (Doc. 120-6), and a piece of material similar to Tyvek.

Based on the testimony and evidence presented, the Magistrate Judge determined that Arboleda Quinones's treatment aboard the *Mohawk* was humane and appropriate under the circumstances. Doc. 150 at 17. In considering the testimony of Chief Swearer, Officer Saenz, Lt. Pearson, and Defendant Arboleda Quinones, along with the detainee log and medical history log, as it relates to the conditions of Arboleda

Quinones's detention, the Magistrate Judge found that Arboleda Quinones's care and detention while in Coast Guard custody were not inherently coercive so as to render Quinones's statements involuntary. *Id.* at 19. Further, the Magistrate Judge found the conditions of his transport from Port Everglades to the PanEx facility in Pinellas County, Florida were not so inherently coercive as to render Arboleda Quinones's statements involuntary. *Id.* at 22. Regarding Arboleda Quinones's waiver of his *Miranda* rights, the Magistrate Judge concluded, based on the totality of the circumstances, that he made a knowing and voluntary waiver of his rights. *Id.*

      D.    *Arboleda Quinones's Objections*

Arboleda Quinones now objects to the Magistrate Judge's factual findings and analysis contained in the Report and Recommendation that recommended the Motion to Suppress Statements be denied. Arboleda Quinones challenges seven factual findings as not being reflective, supported by, or based on the admissible evidentiary testimony and exhibits. Doc. 158 ¶¶ 16–22. Additionally, Arboleda Quinones objects to five areas of analysis which he claims are not reflective of or supported by the evidentiary testimony and exhibits. *Id.* ¶¶ 24–28. On March 4, 2021, Arboleda Quinones filed supplemental factual objections.[3] Doc. 190.

---

[3] Arboleda Quinones filed a motion for extension of time to file objections to the Magistrate Judge's Reports and Recommendations. *See* Doc. 155. On February 17, 2021, the Court granted the motion and gave Arboleda Quinones an extension until March 4, 2021, to file objections to the extent that Arboleda Quinones had not already filed objections. Doc. 179. On March 4, 2021, Arboleda Quinones filed a supplemental objection. Doc. 190. On the same date, he filed a second motion for extension of time to file supplemental objections because two motions to compel (Docs. 156 and 168) were pending. Doc. 189. The Magistrate Judge

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge.  The district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).  The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation.  Fed. R. Civ. P. 72(b)(3).  The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions.  *Id*. The objections to a magistrate judge's recommendation and report must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019).

## III.    DISCUSSION

### A.    *Objections to the Factual Findings*

Arboleda Quinones challenges certain factual determinations made by the Magistrate Judge. Specifically, Arboleda Quinones objects to factual findings that: (1) he had access to a "restroom" during the time he was held by the Coast Guard; (2) he was "provided" hydrocortisone cream and ibuprofen for pain "shortly after his detention"; (3) he frequently reported "no concerns" to the medical staff; (4) he

---

has since ruled on those motions to compel, granting in part and denying in part the motions. Doc. 204.

reported "no complaints" to the medical staff aboard the *Hamilton*; (5) food was provided or that the van stopped at least once for a restroom break during the three-to-four-hour van transport to Pinellas County; (6) he "did not appear malnourished or in poor health" at the PanEx facility; and (7) Agent Lima actually conducted 30 to 40 prisoner interviews that were recorded. Doc. 158 at 5–10. Arboleda Quinones supplemented his objections to the factual findings to raise the factual omission from the report and recommendation that his signature on the *Miranda* waiver form omits his last name, which he argues is a strong indication of his lack of comprehension. Regarding Agent Lima's testimony that he purportedly videotaped 30 to 40 interrogations, Arboleda Quinones seeks to supplement his objection with the fact that outstanding discovery requests may prove this statement to be untruthful because defense counsel's informal polling of CJA counsel reflects Agent Lima never videotapes a pre-first appearance interrogation.

Upon review of the record, the Magistrate Judge's findings of fact are well supported. The court will address each in turn.

### 1. Use of the term "restroom"

Arboleda Quinones first complains that the Magistrate Judge incorrectly used the term "restroom" in the Report and Recommendation (R&R). Arboleda Quinones states that it was an open-air toilet on the top deck of the vessel. He argues there is no "room" or "walls." Upon review of the testimony, the Court finds Arboleda Quinones's objection to be a distinction without a difference considering the totality of the circumstances. Although there was no "restroom" in the traditional sense, there

is no evidence that Arboleda Quinones or his co-defendants were prohibited from being able to relieve themselves in private. Officer Saenz testified the Defendants had a "restroom area" where they were able to attend to their bathroom and shower needs in private. Doc. 123 at 206. He described, "the toilet is actually tucked behind a big storage box, and you can't see back there. And then, again, like I said, with the shower, it's got the tarp around it." *Id.* Each time one of the Defendants used the "head,"[4] it was documented in the detainee log. *See* Doc. 121-2 at 3–62. Review of the detainee log reveals Arboleda Quinones had ample opportunity and did use the toilet daily, and thus the Court finds no error in the Magistrate Judge's use of the term "restroom" as the factual finding that Arboleda Quinones had access to a relatively private restroom area with a toilet is supported by the evidence.

### 2. "Provided" hydrocortisone cream and ibuprofen "shortly after detention"

Arboleda Quinones contends the Magistrate Judge's statement that he was "provided" hydrocortisone cream is factually inaccurate as the medical log documents that hydrocortisone cream was applied, not provided to him. Review of the medical log reflects various entries regarding Arboleda Quinones's receipt of hydrocortisone cream for complaints of itching. *See* Doc. 121-3 at 3 (entries on March 13, 14, and 15, 2020 "Given hydrocortisone cream"), 8 (on March 11, 2020 "Complaint of itching on back of neck, sun & saltwater irritation. Applied hydrocortisone cream to affected

---

[4] A "head" is "a ship's toilet." *See* https://www.merriam-webster.com/dictionary/head Most of the log entries document "used head." Some entries reference "bathroom break." *See* Doc. 121-2 at 3–62.

area." "Hydrocortisone cream for neck and inner thigh"), 9 (entry on March 11, 2020

"Applied hydrocortisone cream" "Hydrocortisone cream applied"), 9 (entry on March

12, 2020 "Hydrocortisone cream"), 9 (entry on March 15, 2020 "Hydrocortisone

cream given for neck"). The notes do not reflect who applied the hydrocortisone

cream. Regardless, whether given or applied, Arboleda Quinones received

hydrocortisone treatment for complaints of itching on March 11, 12, 13, 14, and 15,

2020.

Arboleda Quinones also argues that the evidence does not support a finding that

he was treated "shortly after detention." Specifically, he claims the Magistrate Judge's

factual finding that he was provided ibuprofen for pain "shortly after his detention" is

inaccurate. He states that despite his complaints of constipation for 5 days,[5] he was not

provided ibuprofen until he complained of "very very painful" low back pain.[6]

However, review of the medical log reveals that Arboleda Quinones was medically

assessed in the early morning hours on March 11, 2020, his first full day on the

*Mohawk*. Doc. 121-3 at 8. He had complaints of heals itching and low back pain for

one day. He had only eaten crackers for the past four days. *Id.* He was treated with

---

[5] The reference to Arboleda Quinones's having constipation for five days is misleading to the extent it implies he had the condition for five days during detention before receiving treatment from the Coast Guard. To the contrary, the reference was to the time prior to the interdiction during which he had no medical care. Upon arrival of the Coast Guard, Arboleda Quinones was medically assessed his first day of detention and began receiving medical treatment that same day. Doc. 121-3 at 7.

[6] Arboleda Quinones complains that he was not given ibuprofen earlier, but it appears likely that the Ibuprofen is the medication to which he had an allergic reaction. As documented in the medical log, the allergic reaction was treated the same day it happened and thereafter monitored. *See* Doc. 125 at 70; 121-3 at 9.

hydrocortisone cream for his itching. *Id.* On March 12, 2020, Arboleda Quinones had complaints of constipation and he was treated with senna tabs. *Id.* at 9. On March 13, 2020, he was again given senna tabs for constipation. *Id.* On the same date, Arboleda Quinones was given ibuprofen for complaints of painful low back pain. *Id.* Thereafter, Arboleda Quinones complained of swelling eyes, itchy throat and difficulty breathing which may have been an allergic reaction to medication. Arboleda Quinones was treated with diphenhydramine and monitored. *Id.* The record evidence supports that Arboleda Quinones was medically assessed on the first day he was detained and began receiving medical treatment that day. The Magistrate Judge's factual findings are supported by the evidence.

### 3. He frequently reported "no concerns" and
### 4. He reported "no complaints" to the medical staff of the *Hamilton*

Arboleda Quinones objects to the Magistrate Judge's findings that Arboleda Quinones frequently reported no concerns to the medical staff, that he reported "no complaints" to the medical staff each day aboard the *Hamilton*, and that he did not testify he was denied medication for a specific medical issue. Arboleda Quinones argues that, to the contrary, the detainee log demonstrates repeated medical concerns and Officer Saenz testified he would listen to Arboleda Quinones's complaints. Arboleda Quinones further contends that the reference to "no concerns" in the medical log was the subjective perception of Coast Guard personnel and was not proof that Arboleda Quinones had no concerns.

Review of the evidence reflects the Magistrate Judge's findings are supported. The detainee log indicates that Arboleda Quinones requested to see a doctor on March 11 and 13, and the medical log, consistent with that, reflects he received medical care on both of those days. Although the detainee log reflects that the co-defendants were given pain medication and cough drops on multiple occasions in which Arboleda Quinones was not, Arboleda Quinones does not direct the Court to any evidence demonstrating that he requested or needed pain medication or cough drops on the dates and times his co-defendants received such medication. Review of Arboleda Quinones' testimony reveals that once on board the *Hamilton*, he felt and slept better because they were housed inside. Doc. 125 at 71 ("at the other cutter, then I felt better, because we weren't getting wet, we weren't getting cold, we weren't feeling the heat of the day, because we were inside the cutter itself"). In response to questions about medical concerns while on board the *Hamilton*, Arboleda Quinones testified he felt a "bit weak," his stomach "kind of tightened up," and he was constipated. *Id.* at 72. There is no indication that Arboleda Quinones voiced these concerns to medical staff of the *Hamilton*. Arboleda Quinones argues that upon arrival at Port Everglades he was clearly suffering from weeks without pain medications, cough drops or nausea medication. However, pain, sore throat, and nausea were not any of the concerns he testified to when asked about medical issues while on board the *Hamilton*, where he had spent the past five days before arriving in port. *See id.* The Magistrate Judge's factual findings are supported by the testimony and evidence of record.

**5. Food and bathroom break provided during van transport**

Arboleda Quinones objects to findings related to Agents Lima and Ramirez testifying that the Defendants were provided food and/or the van stopping for a restroom break during the three-to-four-hour drive from Port Everglades to Pinellas County. Doc. 158 at 9. Arboleda Quinones argues that neither of these officers had personal knowledge of the van transport. The Magistrate Judge's findings in this regard are consistent with what Arboleda Quinones argues. While the Magistrate Judge indicated Agents Ramirez and Lima testified that they believed Arboleda Quinones was provided food and that the van had stopped at least once for a bathroom break, the Magistrate Judge specifically noted that neither had personal knowledge of the events and further noted that Arboleda Quinones testified that he was not given any food or offered a bathroom break during the transport. Doc. 150 at 9–10. The Magistrate Judge's analysis regarding the conditions of Arboleda Quinones's transport were not premised on a factual finding that Arboleda Quinones had received food and/or a bathroom break. *See* Doc. 150 at 21 ("[R]egardless of whether Defendant Arboleda Quinones was provided food during the drive to the PanEx facility, he was neither malnourished, soiled in his undergarments, nor unduly deprived of food prior to his single, one-hour interview with Agent Lima."). The Magistrate Judge's factual findings regarding the testimony related to food and bathroom breaks are consistent with and supported by the testimony and evidence.

### 6. Arboleda Quinones "did not appear malnourished or in poor health"

Arboleda Quinones objects to the factual finding, based on the testimony of Agent Lima, that Arboleda Quinones did not appear malnourished or in poor health

when he arrived at the PanEx facility. Arboleda Quinones complains that this finding is inconsistent with Agent Lima's testimony that he had no independent recollection of the interview. Review of Agent Lima's testimony shows that fatigue from being on the boat is something that he considers when questioning a defendant. Doc. 125 at 22. When Agent Lima questioned Arboleda Quinones, nothing stood out about him. *Id.* at 23. Arboleda Quinones did not complain about fatigue or anything out of the ordinary. *Id.* Agent Lima testified that if Arboleda Quinones had shown any kind of discomfort or voiced objection because he was tired, then Agent Lima would not have proceeded with the interview. *Id.* at 24. If Agent Lima had had concerns, he would have documented it in his report. *Id.*

Arboleda Quinones argues that Agent Lima testified it was possible that he was crying throughout the interview, Doc. 158 at 10, which he submits is inconsistent with testimony that there were no concerns. This argument mischaracterizes Agent Lima's testimony. The question initially posed to Agent Lima was whether or not Arboleda Quinones was crying at any time to which Agent Lima responded he did not recall. Doc. 125 at 34. Upon further questioning, Agent Lima testified that it was possible that Arboleda Quinones was crying. *Id.* There is no testimony that Arboleda Quinones was crying throughout the interview. The Magistrate Judge's factual findings are supported by the testimony and evidence.

### 7. Agent Lima actually conducted 30 to 40 recorded prisoner interviews

Arboleda Quinones objects to the Magistrate Judge's factual findings to the extent they rely at all on testimony of Agent Lima because, according to Defendant,

he has a good faith basis for the position that Agent Lima is untruthful and his testimony unreliable. Doc. 158 at 10. Specifically, Arboleda Quinones cites to Agent Lima's testimony that he has videotaped 30 or 40 of his interviews of boat case prisoners, arguing this testimony cannot be truthful because defense counsel has polled CJA counsel who have indicated Agent Lima never videotapes a pre-first appearance interrogation. *Id.* In his supplemental objection, Arboleda Quinones objects to the Court entering final order on the R&R without the benefit of reviewing the 30 to 40 recorded interrogations that are the subject of a motion to compel. Doc. 190 at 7. Arboleda Quinones further urges the outstanding discovery would be relevant given Agent Lima's testimony that he had no independent recollection of his interview but employed the same procedures for each interview he conducts. *Id.* Arboleda Quinones argues that review of the recorded interviews in the 30 to 40 other cases will conclusively establish whether Agent Lima testified truthfully in this case. *Id.* at 8. The Magistrate Judge denied the motion to compel the log of interviews, finding such discovery to be speculative as to whether it will yield material information. Doc. 204 at 12. Additionally, the Magistrate Judge noted that Arboleda Quinones was provided with three forms during his interview: a consular notification form, a recording form, and an advice of rights form. *Id.* at 12. Of significance, Arboleda Quinones does not take issue with his signature on the consular notification form. Regarding the other two forms, Arboleda Quinones initially testified he did not recognize the forms, and then he testified he signed the forms at the direction of Agent Lima but didn't understand them. Doc. 125 at 84–85. Thereafter, he testified he believed he had a

choice to "sign those papers" and believed he would be better off if he signed them. *Id.* at 90–91.

At issue here is the credibility of Agent Lima, whom the Magistrate Judge found to be credible. As a preliminary matter, the Court finds unpersuasive Arboleda Quinones's argument that review of Agent Lima's interviews of other prisoners in unrelated matters will conclusively establish his truthfulness or lack thereof in the instant case. Moreover, "to adequately determine the credibility of a witness . . . the fact finder must observe the witness." *United States v. Powell*, 628 F.3d 1254, 1257 (11th Cir. 2010) (quoting *Louis v. Blackburn*, 630 F.2d 1105, 1110 (5th Cir. 1980)). This requirement is satisfied "either by the district judge accepting the determination of the magistrate after reading the record, or by rejecting the magistrate's decision and coming to an independent decision after hearing the testimony and viewing the witnesses." *Id.*

The Eleventh Circuit has cautioned district judges from overruling a magistrate judge's findings where credibility determinations are dispositive. *See Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cty., Fla.*, 244 F.3d 927, 946–47 (11th Cir. 2001); *Proffitt v. Wainwright*, 685 F.2d 1227, 1237 (11th Cir. 1982). "Where, as here, a district judge does not personally observe the witnesses in making a subjective finding of fact, [the Eleventh Circuit views] such a finding [based on credibility] with skepticism, especially where, as here, the finding is contrary to the one recommended by the judicial official who observed the witnesses." *Manning*, 244 F.3d at 947.

This Court will not overrule the recommendation of the Magistrate Judge who had the opportunity to observe Agent Lima's testimony during the hearing and made credibility determinations based on the testimony. The record supports the findings made by the Magistrate Judge.

### 8. Signature on *Miranda* waiver was printed first name only

In his supplemental objection, Arboleda Quinones objects to the Magistrate Judge's factual findings to the extent they omit the fact that his signature on the *Miranda* waiver form consisted of his first name printed and omitted his last name. Doc. 190 at 7. Arboleda Quinones raises this objection stating, without more, that it is a "strong indication that he had the comprehension level of a juvenile." The lack of his last name appearing on the *Miranda* waiver form was not raised in Arboleda Quinones's motion to suppress, nor was it argued to the Magistrate Judge at the evidentiary hearing. Moreover, while the district court in reviewing a report and recommendation may consider further evidence, Arboleda Quinones fails to cite any legal authority to support his conclusion. Accordingly, the Court exercises its discretion to decline to consider the argument. *See Williams v. McNeil,* 557 F.3d 1287 (11th Cir.2009) (holding district court has discretion to decline to consider party's argument when argument was not presented first to magistrate judge, but rather was first raised in party's objections to magistrate judge's report and recommendation).

### B.    *Legal Analysis*

Arboleda Quinones next challenges certain analyses by the Magistrate Judge. Specifically, Arboleda Quinones objects to the Magistrate Judge's analysis that (1)

Arboleda Quinones's treatment aboard the *Mohawk* and *Hamilton* was humane and appropriate; (2) Arboleda Quinones's medical issues were promptly addressed by the medical staff and that he did not report medical issues after treatment for an allergic reaction; (3) the holding from the Eleventh Circuit supplemental authority he relies upon was considered only as it relates to his three-to-four-hour van transport to Pinellas County, as opposed to considering it in the context of his 24-day transportation; (4) his personal and cultural background was not a factor to be considered, particularly given his lack of education, lack of knowledge of legal matters or the role of an attorney, and his lack of knowledge of the American legal system; and (5) Agent Lima's testimony is to be credited where he testified based upon his normal procedure for reviewing *Miranda* warnings as opposed to his independent recollection.

## 1. Arboleda Quinones's treatment aboard the *Mohawk* and *Hamilton*

Arboleda Quinones challenges the Magistrate Judge's statement that his treatment aboard the *Mohawk* and *Hamilton* was humane and appropriate. The testimony and evidence show Arboleda Quinones was medically screened the first full day aboard the *Mohawk*, he was provided access to medical care, and he was fed three meals per day which was the same food provided to the crew.[7] He was permitted to use the toilet upon request. He was given access to a restroom area where he brushed his teeth every day and showered at least every other day. And, on multiple occasions,

---

[7] In contrast, Arboleda Quinones only had crackers to eat for the four days prior to the interdiction. When Officer Saenz boarded the GFV, he shared his personal food with Defendants. Doc. 123 at 158. The GFV was a small vessel with no food, no water, no shower, no privacy, and no protection from the elements.

the crew made available music and playing cards for the detainees' entertainment. The testimony reflects the Defendants were provided cots and blankets and permitted breaks from their shackles. Arboleda Quinones testified that the conditions on the *Hamilton* were improved because they were inside the ship. Under the totality of the circumstances, the Magistrate Judge's analysis that Arboleda Quinones's treatment aboard the *Mohawk* and *Hamilton* was humane and appropriate is legally sound and supported by the evidence.

### 2. Arboleda Quinones's medical issues promptly addressed

Arboleda Quinones objects to the Magistrate Judge's findings that his "medical issues were promptly addressed by the medical staff" and that he did not report any medical issues after being treated for an allergic reaction. Doc. 158 at 11. The factual findings in this regard have already been raised and are addressed above. To the extent Arboleda Quinones cites to these facts to argue that his treatment was inhumane and inappropriate, the Court finds the Magistrate Judge's analysis and conclusions to the contrary to be supported by the evidence as discussed above. Moreover, to the extent that any medical treatment was withheld because of Arboleda Quinones's allergic reaction to medication given, the Court finds such facts do not otherwise refute the Magistrate Judge's conclusion that his treatment was humane and appropriate under the circumstances.

### 3. Arboleda Quinones's Supplemental Authority

Arboleda Quinones argues that the Magistrate Judge's analysis is flawed to the extent that the Magistrate Judge considered his supplemental authority, *Bilal v. Geo*

*Care, LLC*, 981 F.3d 903 (11th Cir. 2020), only in the context of his three-to-four-hour van transport as opposed to considering it in the context of his 24-day detention and transport. The Magistrate Judge considered and discussed in detail the facts and holding of the *Bilal* opinion:

> In *Bilal*, the Eleventh Circuit held that the transport conditions of a civilly committed offender violated his Fourteenth Amendment rights. The offender in *Bilal* was restrained during the transport using leg irons, waist chains, and black box restraints. He rode in a crowded van which travelled at excessive speeds. Throughout the 600-mile trip, he was provided only one sandwich and denied restroom breaks. On review of the dismissal of his claims under 42 U.S.C. § 1983, the Eleventh Circuit held that the offender stated a claim for violation of his Fourteenth Amendment rights only with respect to the denial of restroom breaks. The Court found that although the restraints, crowded van, limited food, and length of the trip may have been uncomfortable, these conditions did not amount to a violation of his constitutional rights. However, because the offender was denied restroom breaks during the trip, he was forced to defecate in his clothing and remained in his own excrement for approximately 300 miles. The Court found that this condition was not consistent with the offender's Fourteenth Amendment rights.

Doc. 150 (citing *Bilal*, 981 F.3d at 913–16). The Magistrate Judge acknowledged a dispute in the testimony regarding whether food was provided during the transport, but noted that upon arrival to the PanEx facility, Defendants were given food, water, and access to a restroom. *See* Doc. 125 at 23. Arboleda Quinones testified he was provided a sandwich when he arrived at the PanEx facility. *Id.* at 76. The Magistrate Judge concluded the *Bilal* case was factually distinguishable because regardless of whether Arboleda Quinones was provided food during the transport, he received food

upon arrival, and more significantly he was not "soiled in his undergarments" as the offender in *Bilal* was. The Court finds the Magistrate Judge's analysis well-reasoned.

Arboleda Quinones now wants to argue, however, that the reasoning in *Bilal* should apply to the entire trip from when he was first detained aboard the *Mohawk* until reaching the PanEx facility to support his argument that his rights were violated and his conditions of transport inherently coercive to render his statements involuntary. Applying the reasoning in *Bilal* to the entirety of his detention does not yield a different result. The evidence shows he was medically assessed and treated the first full day he was aboard the *Mohawk*. He received three meals per day aboard the *Mohawk* and the *Hamilton*. The detainee logs demonstrate he used the "head" daily on both ships. He was permitted to shower daily or every other day. He was able to brush his teeth every day. Although he was not permitted to wear undergarments, there is no indication he soiled himself at any point during his detention from March 10 until he arrived at the Pan Ex facility on April 3, 2020. *Bilal* is distinguishable, whether applied to the three-to-four-hour van transport to the PanEx facility or as applied from the date of his initial detention beginning on March 10, 2020 until he reached the PanEx facility. Accordingly, Defendant's objection on this issue is overruled.

### 4. Personal and cultural background

Without citing any legal authority for his position, Arboleda Quinones objects to the Magistrate Judge's finding that his lack of education and prior knowledge or exposure to legal matters did not preclude a finding of a valid *Miranda* warning. As an

initial matter, Arboleda Quinones fails to direct the Court to any authority showing his personal or cultural background are appropriate factors for consideration. And while a defendant's education is one of a number of factors that courts may consider in determining whether a *Miranda* waiver has been coerced, a low I.Q. alone does not necessarily render a defendant's statements involuntary. *See Hubbard v. Haley*, 317 F.3d 1245, 1252–54 (11th Cir. 2003) (noting that among the nonexclusive factors courts consider in determining whether a "statement was the product of 'an essentially free and unconstrained choice'" are "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police") (internal citations omitted). Moreover, the Magistrate Judge took into consideration his education. *See* Doc. 150 at 24 ("The Court has considered Defendant Quinones's personal characteristics, education, and intelligence, the actual circumstances of the interview, and assessed the psychological impact on Defendant Quinones in reaching the conclusion that Defendant Quinones voluntarily, knowingly, and intelligently waived his rights.").

"Whether the [incriminating] statement was voluntarily given by [Arboleda Quinones] must be examined in light of the totality of the circumstances." *Id.* at 1252 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The Magistrate Judge noted that Arboleda Quinones "responded to all questions with appropriate, articulate responses that indicated he understood the questions posed and the dialect of Spanish spoken by the interpreters." Doc. 150 at 23. The evidence shows Arboleda Quinones's interview by Agent Lima at the PanEx facility lasted approximately one hour. He

received a sandwich which he was permitted to eat before his interview. He did not appear fatigued. Doc. 125 at 23. Although he describes the room in which he was interviewed as a "small closed cloth-covered room," *see* Doc. 8, 9, there is nothing about the nature of the interrogation to indicate that physical force was ever used against him. In this circuit, "coercive police activity is a necessary predicate to a finding that the confession by a person with a low intelligence level is involuntary." *Hubbard*, 317 F.3d at 1254 (citing *Singleton v. Thigpen*, 847 F.2d 668, 671 (11th Cir. 1988) (citation omitted)). Based on the totality of the circumstances, the Court rejects Arboleda Quinones's contention he was coerced into signing the *Miranda* waiver form and finds the *Miranda* waiver was voluntary notwithstanding his limited education.

### 5. Agent Lima's testimony is credible

Arboleda Quinones objects to the Magistrate Judge's findings that Agent Lima's testimony was to be credited. Defendant seeks further assessment of Agent Lima's credibility following judicial review of the 30 to 40 recorded Lima interviews from other matters which he has sought to compel. The Magistrate Judge denied Arboleda Quinones's request for this discovery finding it to be speculative whether such discovery will yield material information. Doc. 204 at 12. Further, in the Report and Recommendation, the Magistrate Judge noted additional evidence supporting Agent Lima's credibility and calling into question Arboleda Quinones's credibility. Doc. 150 at 24–26. For example, Arboleda Quinones changed his answers multiple times, and there is no dispute he was advised of his rights in Spanish.

"[A] trial court's credibility determination 'is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony.'" *Odili v. U.S. Parole Comm'n*, 474 F.3d 1255, 1261 (11th Cir. 2007) (quoting *United States v. Ramirez–Chilel*, 289 F.3d 744, 749(11th Cir. 2002)) (emphasis in original). There is nothing improbable about Agent Lima's testimony as to his routine of advising interviewees such as Defendant as to their *Miranda* rights and the advice of rights form. *See, e.g., United States v. Jules*, 244 F. App'x 964, 972 (11th Cir. 2007) (holding that despite the failure of the agent to testify as to what he specifically said to the defendant, the district court did not clearly err in finding that defendant was properly given his *Miranda* rights where the agent testified he used a DEA card to advise defendant of his rights and the agent read this card generally and as a matter of policy so that he did not omit any of the rights). The Magistrate Judge's credibility findings regarding Agent Lima are supported by the evidence.

Arboleda Quinones additionally objects to the Magistrate Judge's conclusion that he was not coerced, arguing Agent Lima's statement to him that the only way he can help himself is by telling the truth constitutes coercion. The Court finds this objection unavailing. Statements to the effect that "cooperating truthfully" would be in a defendant's "best interest" are not sufficiently coercive to render a defendant's incriminating statements involuntary. *See United States v. Hipp*, 644 F. App'x 943, 947–48 (11th Cir. 2016) (finding that statements to a defendant that he should tell the truth and that cooperating with the government would be in his best interest amounted to

"no more than affording [Hipp] the chance to make an informed decision with respect to [his] cooperation with the government").

## IV.   CONCLUSION

For the reasons discussed above, the Court finds that the Magistrate Judge's factual findings are supported by the evidence. The Court rejects Arboleda Quinones's arguments that he did not give a knowing, voluntary waiver of his *Miranda* rights. Further, based upon the totality of the circumstances, the Court agrees with the Magistrate Judge's conclusion and finds it to be supported by the record. Arboleda Quinones was not coerced, intimidated, or deceived into making the deliberate choice to waive his *Miranda* rights.

After careful consideration of the Report and Recommendation of the Magistrate Judge and the Objections thereto, in conjunction with an independent *de novo* examination of the file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects, and the motion to suppress statements will be denied. Accordingly, it is now

**ORDERED:**

(1)    The Report and Recommendation of the Magistrate Judge (Doc. 150) is adopted, confirmed, and approved in all respects and is made a part of this Order for all purposes, including appellate review.

(2)    Defendant Arboleda Quinones's Objections (Docs. 158, 190) are overruled.

(3)     Defendant Arboleda Quinones's Motion to Suppress Statements (Doc.

53) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on June 29, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies:
Counsel of Record
Unrepresented parties, if any
United States Magistrate Judge