UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          Case No.: 8:20-cr-138-CEH-JSS

DILSON DANIEL ARBOLEDA
QUINONES
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendant Dilson Daniel Arboleda Quinones's ("Defendant Quinones") Second Motion to Suppress Statements ("Motion") (Dkt. 167), the Government's Responses in Opposition to the Motion (Dkts. 171, 203), and Defendant Quinones's Reply in further support of the Motion (Dkt. 187). The presiding district court judge referred the Motion to the undersigned for a report and recommendation. Upon consideration and for the reasons below, the undersigned recommends that the Motion be granted in part and denied in part.

## BACKGROUND

This case arises out of a narcotics interdiction by the United States Coast Guard ("Coast Guard") in the Eastern Pacific Ocean. The Coast Guard detained Defendant Quinones and his codefendants (collectively, "Defendants") pursuant to the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501–70508.

A March 19, 2020 indictment alleges that Defendants, "while upon the high seas on board a vessel subject to the jurisdiction of the United States," conspired to knowingly and intentionally distribute and possess with the intent to distribute (Count

I), and aided and abetted one another in possessing with intent to distribute  (Count II), "five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine," in violation of 21 U.S.C. § 960(b)(1)(B)(ii), 46 U.S.C. §§ 70503(a), 70506(a), (b), and 18 U.S.C. § 2.  (Dkt. 1.)

Following his first appearance and arraignment on April 6, 2020, the Court entered a pretrial discovery order.  (Dkts. 20, 25.)  Defendant Quinones then timely filed a motion to suppress statements.  (Dkt. 53.)  After holding an evidentiary hearing in October 2020, the undersigned recommended that the Court deny the first motion to suppress.  (Dkt. 150.)  Specifically, the undersigned found that Defendant Quinones voluntarily, knowingly, and intelligently waived his *Miranda*[1] rights and made a voluntary, uncoerced statement to law enforcement on April 3, 2020.  (Dkt. 150.)  The presiding district court judge adopted the undersigned's report and recommendation and denied Defendant Quinones's first motion to suppress.  (Dkt. 231.)

Following the evidentiary hearing in October, Defendant Quinones moved for leave to file an untimely pretrial motion ("Motion for Leave").  (Dkt. 134.)  The Court granted in part and denied in part the Motion for Leave.  (Dkt. 166, 201.)  The Court granted Defendant Quinones leave to move the Court to: (1) suppress his statements because the Government allegedly violated Federal Rule of Criminal Procedure 5; (2) suppress a certification from the United States Department of State (Dkt. 93) because the Government allegedly violated his rights under the Fifth Amendment;

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

(3) suppress his statements because the Government allegedly violated his rights under the Suspension Clause of the Constitution; and (4) suppress his statements because the Government allegedly violated his rights under the Eighth Amendment.  (Dkt. 166, 201.)  The undersigned held a limited evidentiary hearing on Defendant's Second Motion to Suppress Statements on July 16, 2021.  (Dkt. 252.)

## FACTUAL FINDINGS

During the July 16, 2021 evidentiary hearing, the Court heard testimony from United States Homeland Security Investigations ("HSI") Supervisory Special Agent Richard Dunn ("Agent Dunn"), United States Coast Guard Lieutenant Karl Gunther ("Lieutenant Gunther"), and United States Marshals Service Supervisory Deputy Marshal Michael McClung ("Deputy Marshal McClung").  Additionally, the Court received the following into evidence: (1) a March 30, 2020 email discussing Defendants' arrival in the Middle District of Florida (Gov't Ex. 1); (2) email correspondence dated Friday, April 3, 2020 regarding Defendants' first appearance (Gov't Ex. 2); (3) a photograph (Def. Ex. 2); (4) a Coast Guard communique (Def. Ex. 4); (5) two Publix receipts (Def. Ex. 5); (6) a Response to Action Request form (Def. Ex. 7); (7) administrative processing documents (Def. Ex. 9); and (8) email correspondence dated Friday, April 3, 2020 regarding Defendants' first appearance (Def. Ex. 16.  The Court admitted two additional exhibits containing confidential law enforcement information under seal.  (Def. Exs. 11, 18.)

The Court also took judicial notice of the following, without objection: (1) maps reflecting the distance between Port Everglades and the federal courthouses in Fort Lauderdale, Miami, Fort Myers, and Tampa; (2) the testimony and evidence from the October 2020 evidentiary hearing on Defendant Quinones's first motion to suppress; (3) that the federal courthouses in the Southern and Middle Districts of Florida are generally open during the daytime hours; (4) the administrative orders for COVID-19 protocols in effect on April 3, 2020 for the Southern and Middle Districts of Florida; (5) that on April 3, 2020, the United States was affected by the COVID-19 global pandemic; and (6) the mission of Pretrial Services.  Based on the testimony and the exhibits received in evidence, the undersigned recommends the following findings of fact.

On March 10, 2020, the Coast Guard Cutter *Mohawk* ("*Mohawk*") intercepted Defendants in international waters of the Eastern Pacific Ocean, approximately 87 nautical miles from Jicarita Island, Panama.  In the early morning hours of March 11, 2020, the Coast Guard detained Defendants aboard the *Mohawk* pursuant to the MDLEA.  The *Mohawk* then continued its law enforcement patrol of the Eastern Pacific Ocean.  The Coast Guard transferred Defendants to the Coast Guard Cutter *Hamilton* ("*Hamilton*") on March 29, 2020 for transport to Port Everglades, Florida. Among the vessels in the vicinity of the *Mohawk* in the Eastern Pacific Ocean, the *Hamilton* was best suited for efficient transport to the United States.  Due to the

emerging COVID-19 pandemic, the *Mohawk* did not stop in any ports of call while Defendants were detained aboard.

Once the case had been assigned to the Middle District of Florida, the Panama Express Strike Force ("PanEx")[2] began planning for Defendants' transport from Port Everglades to the Tampa Division of the Middle District for prosecution.  Before the onset of the COVID-19 pandemic, detainees arriving in Port Everglades were usually flown to Tampa by air.  However, air travel was not an available option for Defendants because they could not obtain required COVID-19 testing.  Therefore, PanEx planned for a ground transport from Port Everglades.  PanEx personnel collectively developed the transport plan, aiming to design an efficient, safe, and secure transport.

The transport plan was a complex operation.  As early as March 30, 2020, PanEx planned for Defendants to arrive at the PanEx facility in Pinellas County, Florida on Friday, April 3, 2020, get booked into the Pinellas County Jail later that evening, and then be presented before a judge on Monday, April 6, 2020.  Defendants could be housed at the Pinellas County Jail regardless of whether they were tested for COVID-19.

The *Hamilton* arrived in Port Everglades in the Southern District of Florida in the morning of Friday, April 3, 2020.  Defendants disembarked the cutter between

---

[2] PanEx is a multiagency counter narcotics strike force.  Participating agencies include United States Homeland Security Investigations ("HSI"), United States Drug Enforcement Administration ("DEA"), United States Federal Bureau of Investigation ("FBI"), United States Coast Guard Investigative Services ("CGIS"), United States Marshals Service, and the United States Attorney's Office for the Middle District of Florida.

8:00 and 9:00 a.m. under the supervision of PanEx agents.  The PanEx agents arrested Defendants and provided them with personal protective equipment ("PPE") to protect against COVID-19.  Defendants were also processed by United States Customs and Border Protection ("CBP").  The CBP processing occurred at the ship dock in an abbreviated manner due to the COVID-19 pandemic.  At approximately 9:45 a.m., Defendants were loaded onto a van for transport to the Middle District of Florida, along with four other detainees from the *Hamilton*.  Four additional detainees who also arrived on the *Hamilton* were transported for proceedings in the Southern District of Florida.

The transport plan included a comfort break at an HSI facility in the Middle District of Florida in Fort Myers, Florida.  The transport vans arrived at the secure HSI facility at approximately 11:15 a.m.  Defendants received food, a restroom break, and an opportunity to stretch their legs.  At approximately 11:50 a.m., the vans resumed travel to the PanEx facility in Pinellas County.  The vans arrived at the PanEx facility at approximately 1:15 p.m.  Upon arrival at the PanEx facility, Defendants were placed in holding cells and processed by PanEx personnel.  The processing included gathering DNA, collecting evidence, preparing necessary documents, and conducting interviews.  During his interview with agents from the Federal Bureau of Investigation and HSI, Defendant Quinones made incriminating statements he now seeks to suppress.  After the processing concluded between 3:00 and 4:00 p.m., Defendants were transported to the Pinellas County Jail.  Defendants were booked

into the Pinellas County Jail at approximately 4:18 p.m. on Friday afternoon.  The Government presented Defendants for their initial appearances before a magistrate judge in the Middle District of Florida in Tampa, Florida on Monday, April 6, 2020 at 2:16 p.m.

## ANALYSIS

### A. Federal Rule of Criminal Procedure 5

Defendant Quinones contends that his statement should be suppressed because the Government failed to bring him before a magistrate judge in the appropriate district "without unnecessary delay," as required by Federal Rule of Criminal Procedure 5. Specifically, Defendant Quinones argues that the Government unlawfully delayed presenting him to a magistrate judge for 26[3] days, including 23 days at sea, one day of transport and questioning (April 3), and two weekend days in jail (April 4 and 5).  In opposition, the Government asserts that any delay in presenting Defendant Quinones was reasonable and necessary under the circumstances.

### 1. The Prompt Presentment Rule

Federal Rule of Criminal Procedure 5 provides that "[a] person making an arrest" must take the defendant before a magistrate judge "without unnecessary delay."  Fed. R. Crim. P. 5(a)(1)(A), (a)(1)(B).  Rule 5 further provides that when a defendant is arrested in a district other than where the offense was allegedly committed, the first appearance "must be in the district of arrest, or in an adjacent

---

[3] Defendant Quinones states the delay was 27 days.  (Dkt. 167.)  Defendant Quinones was detained on March 11, 2020 and arraigned on April 6, 2020, 26 days later.

district if the appearance can occur more promptly there." Fed. R. Crim. P. 5(c)(2) (punctuation omitted).

Rule 5 codifies the common law rule requiring an arresting officer to take defendants before a magistrate judge "as soon as he reasonably could." *Corley v. United States*, 556 U.S. 303, 306 (2009). The "presentment" requirement was intended to "prevent secret detention" and inform an arrested person of the charges against him. *Id.* In *McNabb v. United States*, 318 U.S. 332 (1943) and *Mallory v. United States*, 354 U.S. 449 (1957), the Supreme Court established an exclusionary remedy for violations of the prompt presentment rule. *United States v. Boche-Perez*, 755 F.3d 327, 333 (5th Cir. 2014) (citing *Corley*, 556 U.S. at 309). The *McNabb–Mallory* rule provides that an incriminating statement obtained during a period of "unreasonable delay" after arrest is generally inadmissible. *Corley*, 556 U.S. at 307–08; *United States v. Alvarez-Sanchez*, 511 U.S. 350, 354 (1994) ("The so-called *McNabb–Mallory* rule, adopted by this Court in the exercise of its supervisory authority over the administration of criminal justice in the federal courts, generally rendered inadmissible confessions made during periods of detention that violated the prompt presentment requirement of Rule 5(a) of the Federal Rules of Criminal Procedure.") (internal punctuation and citations omitted).

Congress enacted 18 U.S.C. § 3501 after the Supreme Court's decisions in *Miranda v. Arizona*, 384 U.S. 436 (1966), *McNabb,* 318 U.S. 332, and *Mallory*, 354 U.S. 449. *See Corley*, 556 U.S. at 309. "When interpreting a statute, we look first and foremost to its text." *Alvarez-Sanchez*, 511 U.S. at 356. Section 3501(c) provides that

an incriminating statement made while under arrest or in detention "shall not be inadmissible solely because of delay in bringing such person before a magistrate judge" if the statement is voluntary and occurs within "six hours immediately following his arrest or other detention."  18 U.S.C. § 3501(c).  The statute further provides that this six-hour "safe harbor period" may be extended if the delay is "reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer."  18 U.S.C. § 3501(c); *see United States v. Carter*, 484 F. App'x 449, 456 (11th Cir. 2012).

In *Corley v. United States*, 556 U.S. 303 (2009), the Supreme Court considered the effect of § 3501(c) on the *McNabb–Mallory* rule.  Ultimately, the Court held that § 3501(c) "modified *McNabb–Mallory* without supplanting it."  *Id*. at 322.  The Supreme Court explained the two-step analysis applicable to determine whether to suppress a statement under § 3501(c) and the *McNabb–Mallory* rule.  First, the court must determine "whether the defendant confessed within six hours of arrest (unless a longer delay was 'reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate judge]')."  *Id*. at 322 (quoting § 3501(c)).  If the defendant made a statement within the safe harbor period, the statement is admissible if it was voluntary.  *Corley*, 556 U.S. at 322.

On the other hand, if the defendant made a statement beyond the safe harbor period and before presentment to the magistrate judge, the court "must decide whether delaying that long was unreasonable or unnecessary under the *McNabb–Mallory* cases,

and if it was, the confession is to be suppressed." *Id.*; *see also United States v. McDowell*, 687 F.3d 904, 910 (7th Cir. 2012) ("In other words, the prompt-presentment *right* is found in Rule 5(a); § 3501(c) and *McNabb–Mallory* establish the *remedial framework* for assessing violations of the right.").  The defendant bears the burden to establish that the delay before presentment was unnecessary.  *United States v. Cabezas-Montano*, 949 F.3d 567, 592 n.20 (11th Cir. 2020); *United States v. Perez*, No. 8:20-cr-83-T-36JSS, 2020 WL 9554484, at *12 (M.D. Fla. Nov. 3, 2020), *report and recommendation adopted,* No. 8:20-cr-83-CEH-JSS, 2021 WL 1345973 (M.D. Fla. Apr. 12, 2021); *United States v. Thompson*, No. 10-cr-20410, 2011 WL 4072506, at *3 (S.D. Fla. Feb. 28, 2011), *report and recommendation adopted,* No. 10-cr-20410, 2011 WL 4055400 (S.D. Fla. Sept. 13, 2011), *aff'd sub nom. United States v. Gray*, 544 F. App'x 870 (11th Cir. 2013).

To determine whether delay was unnecessary, courts look to the reasons for the delay between arrest or detention and presentment to a magistrate judge.  *United States v. Purvis*, 768 F.2d 1237, 1239 (11th Cir. 1985).   "[D]elay for the purpose of interrogation is the epitome of 'unnecessary delay.'"  *Corley*, 556 U.S. at 308; *see Mallory*, 354 U.S. at 455 ("But the delay must not be of a nature to give opportunity for the extraction of a confession.").  However, the *McNabb–Mallory* rule excuses some delay due to administrative and law enforcement processes, such as booking procedures, coordinating with other agencies, and verifying evidence.  *See Carter*, 484 F. App'x at 457–58 (affirming finding that delay was reasonable due to unavailability of magistrate judge and need to locate dangerous evidence); *Boche-Perez*, 755 F.3d at

337 (collecting cases); *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009) (affirming that delay was reasonable due to shortage of law enforcement personnel and heavy caseload); *United States v. Portocarrero-Angulo*, No. 3:16-cr-02555-BEN-01, 2017 WL 3283856, at *8 (S.D. Cal. Aug. 1, 2017) (holding that delay was reasonable for medical screening); *Thompson*, 2011 WL 4072506, at *3 (holding that delay was reasonable due to a logistical problem with processing a large volume of arrestees).

In *United States v. Purvis*, 768 F.2d 1237 (11th Cir. 1985), the Eleventh Circuit examined the requirements of Rule 5.  The Court considered four factors to evaluate the reasonableness of presentment delay, including: (1) the distance between the location of the defendant's arrest in international waters and the port of entry into the United States; (2) the time between the defendant's arrival in the United States and presentment to the magistrate judge; (3) any evidence of mistreatment or improper interrogation during the delay; and (4) any reason for the delay, like exigent circumstances or emergencies.  *Id.* at 1238–39; *see also Cabezas-Montano*, 949 F.3d at 591 (reaffirming "various factors are considered in determining whether a delay was unnecessary, including [the four *Purvis* factors]").

2. Discussion

The analysis must begin with the plain language of the rule.  *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) ("We begin our construction of [statutory text] where courts should always begin the process of legislative interpretation, and where

they often should end it as well, which is with the words of the statutory provision."). Rule 5(a)(1)(A) provides: "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." Black's Law Dictionary defines "unnecessary" as "not required under the circumstances." *Unnecessary*, Black's Law Dictionary (11th ed. 2019).

The text of Rule 5 further provides that where the offense was allegedly committed in a district other than the district of arrest, the initial appearance "must be in the district of arrest, or in an adjacent district if the appearance can occur more promptly there." Fed. R. Crim. P. 5(c)(2)(A), (c)(2)(B)(i) (punctuation omitted). Alternatively, the initial appearance may occur in a district other than the district of arrest if the offense was committed there and the initial appearance "will occur on the day of arrest." Fed. R. Crim. P. 5(c)(2)(B)(ii).

Here, Defendant Quinones was arrested upon his arrival in Port Everglades on April 3, 2020. (Dkt. 124 at 164–65.) The Southern District of Florida was the district of arrest. Additionally, the offense at issue allegedly occurred on the high seas. (Dkt. 1.) Thus, under a plain reading of the text of Rule 5(c), Defendant Quinones's first appearance must have been held in the Southern District of Florida or the Middle District of Florida, but only if the appearance could occur "more promptly" in the Middle District.

Agent Dunn testified that the transport vans left Port Everglades at approximately 9:45 a.m. to travel to the Middle District of Florida. The courts in the

Southern District of Florida were open and conducting judicial business on April 3. Further, the courts in the Southern District of Florida were only a short driving distance from Port Everglades, while travel to the Middle District of Florida took approximately three and a half hours.

Defendant Quinones established that he could have received his first appearance on Friday, April 3 in the Southern District of Florida.  In response, the Government did not present any evidence to the contrary.  Thus, Defendant Quinones did not receive his initial appearance sooner in the Middle District of Florida at 2:16 p.m. on Monday, April 6, 2020, than he would have on Friday, April 3, 2020, in the Southern District of Florida.  Under a plain reading of the text, the Government violated Rule 5(c) by failing to promptly present Defendant Quinones to a magistrate judge in the Southern District of Florida, the district of his arrest.

The Eleventh Circuit has not yet addressed whether suppression of evidence is the proper remedy for a violation of Rule 5(c).  The Eleventh Circuit construed Rule 5(c) in *United States v. Bibb*, 194 F. App'x 619, 620 (11th Cir. 2006).  In *Bibb*, the defendant was arrested on a Friday in the Southern District of Alabama and arraigned in the Northern District of Alabama the following Monday.  *Id.* at 620.  The Eleventh Circuit affirmed the district court's denial of the defendant's motion to dismiss the indictment because the Court had "never recognized dismissal of the indictment as a proper remedy for a Rule 5 violation." *Id.* at 623.  The Court did not address whether a violation of Rule 5(c) would warrant suppression of statements.  *Id.*

The Second Circuit has held that the "appropriate remedy for a violation of Rule 5(c) of the Federal Rules of Criminal Procedure is . . . suppression of any post arrest evidence illegally obtained as a result of the violation of the rule's requirement." *See United States v. Peeples*, 962 F.3d 677, 693 (2d Cir. 2020), *cert. denied,* 141 S. Ct. 1279 (2021), *reh'g denied,* No. 20-6580, 2021 WL 3275789 (Aug. 2, 2021). In *Peeples*, the defendant was arrested in the Northern District of New York for robbing a bank and other crimes he committed in the Western District of New York. *Id.* at 682. Following his arrest, defendant Peeples waived his *Miranda* rights and confessed to committing the bank robbery. *Id.* at 683. The day after his arrest and confession, the government transported defendant Peeples to the Western District of New York and presented him to a magistrate judge. *Id.* at 683. At trial, the government agreed not to introduce his post-arrest statements and confession as evidence. Nevertheless, defendant Peeples was tried and convicted of bank robbery and other crimes. *Id.* at 683.

On appeal, defendant Peeples argued that the government violated Rule 5(c) by failing to present him to a magistrate judge in the Northern District of New York and he sought to dismiss the indictment as a sanction for the violation. *Id.* at 683–84. The Second Circuit held that suppression of any post-arrest evidence obtained as a result of the violation of Rule 5(c) was the appropriate remedy for the violation, not dismissal of the indictment. *Id.* at 693. The Second Circuit explained "[f]or more than seven decades, the Supreme Court has made it clear that the failure to present a defendant promptly before a judicial officer may render a defendant's post-arrest confession

- 14 -

inadmissible."  *Id.* at 686.   The court considered the exclusionary remedy underpinning Rule 5(a) and concluded that there was "no reasonable basis to adopt a different remedy" for violations of Rule 5(c).  *Id.* at 687.

In the absence of binding precedent from the Eleventh Circuit on this issue, the undersigned finds the reasoning of the Second Circuit to be persuasive.  *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) (noting that in the absence of binding precedent in the Eleventh Circuit, "we consider decisions from other circuits as persuasive authority.").  Rule 5(c) and Rule 5(a) require prompt presentment to a judicial officer.  *See Peeples*, 962 F.3d at 687 ("As revealed by the text of Rule 5(c)(2), one of the main concerns, if not the principal one, animating its procedural requirements is precisely the same concern that animates the requirement in Rule 5(a)(1)(A): that a defendant be presented to a judicial officer for his or her arraignment as soon as practicable in order to prevent the Government from using the delay to obtain incriminating evidence or elicit a confession.").  Suppression of evidence obtained in violation of the requirements of Rule 5(c) would mitigate the same harms addressed by Rule 5(a).  *See Corley*, 556 U.S. at 320 ("In a world without *McNabb–Mallory*, federal agents would be free to question suspects for extended periods before bringing them out in the open.").  Accordingly, suppression of evidence is "an appropriate and fully satisfactory remedy" for certain violations of Rule 5(c).  *See Peeples*, 962 F.3d at 687.  The undersigned recommends that Defendant Quinones's April 3, 2020 statement to Agent Lima be suppressed on this basis.  *See Ring v. Boca*

*Ciega Yacht Club Inc.*, 4 F.4th 1149, 2021 WL 2908145, at *7 (11th Cir. 2021) (noting that applying a general rule, when possible, is a "preferable way to approach a question of law"); *cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal punctuation and citation omitted).

Federal Rule of Criminal Procedure Rule 5(a) also required the Government to take Defendant Quinones "without unnecessary delay before a magistrate judge." If Defendant Quinones's statement was obtained during a period of "unreasonable delay" after his arrest or detention, the statement is inadmissible. *Corley*, 556 U.S. at 307–08.

Defendant Quinones was detained on March 11, 2020 in the Eastern Pacific Ocean and arrested on April 3, 2020 at approximately 9:00 a.m. upon arrival in Port Everglades. He made incriminating statements during questioning by FBI and HSI agents on April 3, 2020 between 2:00 and 3:00 p.m. at the PanEx facility in Pinellas County. Approximately six hours elapsed between the time of Defendant Quinones's arrest and his incriminating statement. More than twenty-three days elapsed between the time of Defendant Quinones's detention and his incriminating statement.

Section 3501(c) provides that a defendant's incriminating statement "shall not be inadmissible solely because of delay" in presentment if the statement was made voluntarily within "six hours immediately following his arrest or other detention."

The Government does not contend that the safe harbor period of § 3501(c) applies and the Court finds that it is inapplicable here.  Rather, the Government maintains that given the factors provided in *Purvis*, 768 F.2d 1238-39, the delay in presenting Defendant Quinones to court for his first appearance was reasonable and necessary, and therefore the statement should be admissible.

i.     *Travel to the United States*

Defendant Quinones argues that his detention at sea "was intentionally extended" because the *Mohawk* "continued its mission to patrol" international waters after the interdiction.  (Dkt. 167 at 27, 27 n.34.)  Rule 5 and the *McNabb–Mallory* rule do not require that Coast Guard vessels "be used as taxis to ferry detainees immediately to the nearest United States port."  *United States v. Quijije-Franco*, No. 17-60246-cr, 2017 WL 11536137, at *4 (S.D. Fla. Dec. 27, 2017) (holding that 26-day delay at sea was not unreasonable because Hurricane Maria and sea conditions impacted transportation to the United States); *see Boche-Perez*, 755 F.3d at 338 ("The prompt presentment requirement does not require a magistrate to be available twenty-four hours a day, and the government is not required to take the fastest possible route to the courthouse—just a reasonable one.").

Rather, courts have routinely held that delay due to extended transport from international waters to the United States is reasonable and necessary and does not violate the prompt presentment rule.  *See, e.g.*, *United States v. Zakharov*, 468 F.3d 1171, 1180 (9th Cir. 2006) (affirming finding that 16-day delay was reasonable to travel 1,620

nautical miles to the United States); *Purvis*, 768 F.2d at 1239 (finding no unnecessary delay even though the Coast Guard cutter "continued its normal law enforcement patrolling activities" until defendants could be transferred to a patrol boat for transportation to the United States); *United States v. Aguino-Ramos*, 406 F. Supp. 3d 1308, 1311 (S.D. Ala. 2019) ("The delay in presentation to the Magistrate Judge the next day, April 17, 2019, was reasonable considering the means of transportation, specifically a vessel on the high seas, and the 1,800 nautical miles to travel to the Magistrate Judge in Fort Lauderdale."); *United States v. Mero*, No. 4:17-cr-00067, 2017 WL 4931704, at *3 (E.D. Tex. Sept. 27, 2017), *report and recommendation adopted,* No. 4:17-cr-67, 2017 WL 4922112 (E.D. Tex. Oct. 31, 2017) (holding that 13-day delay was reasonable to transport the defendant detained in the Eastern Pacific Ocean to the United States); *Portocarrero-Angulo*, 2017 WL 3283856, at *8 (concluding that 20-day delay was reasonable to transport the defendant "thousands of nautical miles" to the United States); *United States v. Torres-Iturre*, No. 15-cr-2586-GPC, 2016 WL 2757283, at *3 (S.D. Cal. May 12, 2016) (finding that 21-day delay was reasonable to transport defendants more than 2,000 nautical miles to the United States); *United States v. Savchenko*, 201 F.R.D. 503, 506 (S.D. Cal. 2001) (finding that 16-day delay was reasonable to transport defendants 500 nautical miles from Mexico to the Southern District of California).

Here, Defendants were detained in international waters in the Eastern Pacific Ocean during the onset of a global pandemic.  During the October 2020 evidentiary

hearing, Coast Guard Lieutenant Kyle Pearson testified that after Defendants came aboard, the *Mohawk* "returned to [its] primary mission while the operational commander [would] determine what the best step was to expeditiously get the detainees off our deck." (Dkt. 124 at 218.)

At the July 16, 2021 hearing, Lieutenant Gunther explained that the during the law enforcement patrol at issue, the *Mohawk*'s primary mission was to combat illicit drug trafficking in the western hemisphere. Lieutenant Gunther also testified that there were only a few assets in the area to carry out this mission. Lieutenant Gunther analogized this patrol of the Eastern Pacific Ocean to two or three police cars patrolling the entire continental United States. The Government thus decided to transfer the detainees to the *Hamilton* for transport to the United States because the *Hamilton* was heading back to the eastern United States at the end of March 2020. The *Hamilton*'s return to the United States was planned in advance, as required to secure efficient passage through the Panama Canal. According to Lieutenant Pearson, the *Hamilton* was also the fastest vessel of its class operating near the *Mohawk* at the time. (Dkt. 124 at 214.)

Moreover, travel and border restrictions due to the COVID-19 pandemic precluded the Government from transporting Defendant Quinones to the United States by air. United States Drug Enforcement Administration Special Agent Jose Ramirez explained that before the pandemic, PanEx agents would travel by aircraft to Guatemala or Panama to transport MDLEA detainees to the United States. (Dkt. 124

at 179.)  However, COVID-19 border closures prohibited Coast Guard vessels from stopping at any ports of call to deliver detainees for transport to the United States by air.  (*Id.*)

The undersigned has considered the testimony of Lieutenant Gunther, Lieutenant Pearson, and Agent Ramirez regarding Defendant Quinones's transport from the Eastern Pacific Ocean to the United States.  The undersigned considered the interests of the witnesses in testifying and observed their demeanor on the stand during the two evidentiary hearings in this case.  Each witness appeared candid, knowledgeable, and forthright while testifying in court.  Having observed the testimony and witnesses' demeanor, the undersigned finds the testimony of Lieutenant Gunther, Lieutenant Pearson, and Agent Ramirez to be credible.

Given the distance from the Eastern Pacific Ocean to the United States, the law enforcement mission of the *Mohawk*, the *Hamilton*'s planned travel back to the United States, and the impact of the COVID-19 pandemic on air travel, the undersigned finds that the Coast Guard delivered Defendant Quinones to the United States reasonably under the circumstances and without unnecessary delay.

*ii.    Elapsed time between arrival and presentment*

Defendant Quinones further argues that the Government should have brought him before a magistrate judge in Fort Lauderdale, Miami, Fort Myers, or Tampa, before delivering him to the PanEx facility for questioning.  The Government argues that the national health emergency caused by the COVID-19 pandemic made it

reasonable to continue with "the original plan of action" to transport Defendant Quinones directly to the Tampa Division in the Middle District of Florida. (Dkt. 171.)

Courts have found that delay after arrival or arrest is reasonable and necessary when a magistrate judge is unavailable, the courts are closed, or the law enforcement officer is unable to arrange an appearance due to the court's schedule. *See, e.g.*, *Carter*, 484 F. App'x at 457–58 (affirming denial of motion to suppress in part because magistrate judge was unavailable); *Boche-Perez*, 755 F.3d at 338 ("A magistrate can be considered unavailable due to a host of reasons including: a busy docket; a closed court; or other factors, such as distance and weather, that make transportation impractical, futile, and/or dangerous."); *Perez*, 2020 WL 9554484, at *11 (finding no unnecessary delay because the courts were closed on the day of the defendant's arrival in the United States); *United States v. Rahim*, 382 F. Supp. 3d 561, 574 (N.D. Tex. 2019) (holding that delay caused by the weekend or the magistrate judge's schedule was not unreasonable); *United States v. Miller*, No. 2:10-cr-196, 2011 WL 63509, at *9 (S.D. Ohio Jan. 6, 2011) (concluding the delay was reasonable upon finding that law enforcement "did everything in their power to schedule an initial appearance" on the first business day following the arrest); *United States v. Smith*, No. 1:09-cr-79-JEC-GGB, 2010 WL 11507508, at *2 (N.D. Ga. Jan. 11, 2010) ("Moreover, an overnight or weekend delay due to the unavailability of a magistrate judge is not unreasonable."); *United States v. Harrold*, 679 F. Supp. 2d 1336, 1353 (N.D. Ga. 2009) (finding that law enforcement "exhaust[ed] his efforts to schedule [the] initial appearance before a

magistrate" on the Friday of arrest before interrogating the defendant); *United States v. Lizarraga-Caceres*, No. 8:07-cr-99-T-23TBM, 2007 WL 1796968, at *15 (M.D. Fla. June 21, 2007) (finding delay was reasonable because defendants arrived in the late evening and no magistrate was available at that time).

Defendant Quinones established that the courthouses in Miami, Fort Lauderdale, Fort Myers, and Tampa were open, operating, and conducting judicial business on Friday, the day of arrival. The Government did not present any evidence that a magistrate judge was unavailable for a first appearance on Friday, April 3, 2020, in Miami, Fort Lauderdale, Fort Myers, or Tampa. The evidence reflects only that on Monday, March 30, 2020, a PanEx agent sent an email stating that Defendants were arriving at the PanEx facility on Friday, April 3, 2020, would be booked into the Pinellas County Jail, and then presented on Monday, April 6, for initial appearances. (Dkt. 259-1.) The Government did not present any evidence that in creating this plan, PanEx agents tried to arrange for a first appearance in Miami, Fort Lauderdale, Fort Myers, or Tampa on Friday, but were unable to do so for any reason. *Contra Harrold*, 679 F. Supp. 2d at 1353 (finding no unreasonable delay where the agent tried, unsuccessfully, to arrange a first appearance on the day of arrest before scheduling the following Monday).

Defendant Quinones established that the COVID-19 protocols and judicial orders in effect on April 3, 2020 did not prohibit or otherwise impede first appearances in criminal matters. In response, the Government did not present any evidence that

the COVID-19 pandemic precluded a first appearance on Friday, April 3 after Defendants arrived in the United States.  The Government presented some evidence that the pandemic impacted the transport, including the need to provide PPE to all persons involved, the need to find a local jail to house Defendants even though they could not be tested for COVID-19, and the unavailability of air transport.  Yet, based upon the evidence presented, none of these factors made it reasonable or necessary to delay Defendant Quinones's presentment until Monday.

Indeed, Defendants departed the dock in Port Everglades by approximately 9:45 a.m., after processing by CBP.  Agent Dunn testified that the original plan was to take Defendants to Tampa, not Miami, Fort Lauderdale, or Fort Myers, and that deviation from that plan was not permitted, absent extraordinary circumstances.  Agent Dunn did not testify concerning whether PanEx considered or explored any alternative locations for Defendants' first appearance.  Rather, Agent Dunn explained that the only discussion of alternative locations occurred in the context of contingency plans in the event one of the detainees shows signs or symptoms of COVID-19.

Agent Dunn also testified that the transport vans stopped at a secure HSI facility in Fort Myers en route to Tampa.  At the HSI facility, Defendants were provided food, a restroom break, and an opportunity to stretch their legs.  The transport vans arrived in Fort Myers at approximately 11:15 a.m.  Even though PanEx included this comfort break in its transport plan, it does not appear that the Government attempted to also arrange for a first appearance while in Fort Myers.  Further, the Government did not

present any evidence that the transport arrived too late in the day to obtain a first appearance that afternoon before a magistrate judge in Fort Myers.  *Contra Thompson*, 2011 WL 4072506, at *3 (relying, in part, on testimony that defendants had to be received by the U.S. Marshals by 11:00 a.m. to receive a first appearance that day).

Finally, Agent Dunn also testified that Defendants were processed after they arrived at the PanEx facility in Pinellas County.  This processing included gathering DNA, collecting evidence, booking paperwork, and conducting interviews.  It is not unreasonable to delay presentment for routine, required administrative processing before a first appearance.  *See, e.g.*, *Portocarrero-Angulo*, 2017 WL 3283856, at *8 (finding it was reasonable to delay presentment upon arrival in the United States on a Friday afternoon for the defendant to first undergo a standard tuberculosis screening); *Thompson*, 2011 WL 4072506, at *3 (finding delay was reasonable in part due to delayed processing of large number of arrestees).  However, the Government did not provide any evidence to show that it was necessary to transport Defendant Quinones to Tampa for processing, or that processing could not have occurred in the Southern District of Florida or in Fort Myers.[4]  Likewise, no evidence established that Defendant Quinones could not have been presented to a magistrate judge on April 3 after his processing in Tampa.  *See United States v. Pimental*, 755 F.3d 1095, 1103 (9th Cir. 2014) (finding delay was unreasonable in part because the nearest available

---

[4] Agent Dunn testified that the processing could not have safely and securely occurred at the pier in Port Everglades, but he did not provide any testimony as to whether the processing could have occurred at a secure facility other than the PanEx facility in Pinellas County.

magistrate holding a presentment calendar that day was less than 20 miles away); *Lizarraga-Caceres*, 2007 WL 1796968, at *15 ("[W]hen a judge is available and detention is prolonged for the purpose of eliciting a confession through interrogation, Rule 5(a) is violated."); *see also United States v. Felton*, No. 3:09-cr-00124-RRB, 2011 WL 1362466, at *9 (D. Alaska Apr. 11, 2011) ("And it is clear that this unwarranted delay gave the agents an opportunity to extract more evidence from Felton before he was able to hear his rights from a neutral magistrate."); *United States v. Ramirez*, 696 F. Supp. 2d 246, 261 (E.D.N.Y. 2010) (concluding that delay was not reasonable in part because nearest magistrate judge was within a short driving distance).

Agent Dunn provided extensive testimony regarding the transport of Defendant Quinones on Friday, April 3, 2020.  He provided consistent, specific testimony regarding the sequence of events in this case.  To the extent he could not recall when a particular event occurred, he candidly explained the gap in his recollection or provided an approximate time, as applicable.  The undersigned has considered Agent Dunn's interests in testifying and observed his demeanor on the witness stand.  The undersigned finds Agent Dunn's testimony regarding the timeline of events on April 3, 2020 to be credible.

iii.    *Mistreatment or improper interrogation during delay*

Defendant Quinones contends that the conditions of his detention at sea and the ground transport from Port Everglades to the PanEx facility were inhumane and

- 25 -

unduly restrictive.  (Dkt. 167 at 17.)  Defendant Quinones raised similar arguments in his first motion to suppress.  (Dkt. 53.)  The undersigned previously recommended a finding that the conditions of his confinement aboard the Coast Guard vessels and during the ground transport were humane and appropriate under the circumstances. (Dkt. 150.)  Defendant Quinones received adequate food, water, shelter, and medical care while in Coast Guard custody.  The ground transport van was air-conditioned and operated safely.  Finally, Defendant Quinones was not interrogated while in Coast Guard custody or during the ground transport.  The undersigned also found that the interview lasted approximately one hour, and that Defendant Quinones made a free and deliberate choice to waive his *Miranda* rights.  (Dkt. 150.)  The presiding district court judge adopted these findings.  (Dkt. 231.)

    *iv.*    *Reasons for the delay*

The Government maintains that the public health emergency of the COVID-19 pandemic caused the delay in presentment of Defendant Quinones.  As explained above, the evidence does not reflect that the pandemic impacted the Government's ability to promptly present Defendant Quinones to the nearest available magistrate judge upon his arrival in the United States.

    *v.*    *Recent cases*

Courts applying the *Purvis* factors to determine whether delay is unnecessary under Rule 5 examine the totality of the circumstances of each case, including the location of arrest, effort by law enforcement to schedule prompt first appearances,

conflicts with court schedules, and the availability of magistrate judges.   In *United States v. Perez*, No. 8:20-cr-83-T-36JSS, 2020 WL 9554484 (M.D. Fla. Nov. 3, 2020), *report and recommendation adopted,* No. 8:20-cr-83-CEH-JSS, 2021 WL 1345973 (M.D. Fla. Apr. 12, 2021), the government transported the defendant by Coast Guard vessel from international waters to Miami, Florida and then by air to Clearwater.  *Id.* at *3.   Upon arrival in Clearwater, the defendant was first interrogated and then presented to a magistrate judge for an initial appearance the next day.  *Id*.   The defendant arrived in the United States on a federal holiday and both the Southern and Middle District of Florida courts were closed.   Accordingly, the court denied the motion to suppress under Rule 5 because the delay in presentment after arrival was due to the court closure.  2021 WL 1345973, at *5.

In *United States v. Aguino-Ramos*, 406 F. Supp. 3d 1308 (S.D. Ala. 2019), the defendant traveled by Coast Guard vessel from the Eastern Pacific Ocean to Port Everglades, Florida.  *Id.* at 1310.  The government interviewed the defendant in Port Everglades and presented him to a magistrate judge the following day in Fort Lauderdale.  *Id.* at 1311.   The government then prosecuted the defendant in the Southern District of Alabama.   The court denied the defendant's motion to suppress under Rule 5 and found that the delay was reasonable because of the distance traveled on the high seas to Fort Lauderdale.  *Id.* at 1312.

In *United States v. Thompson*, No. 10-cr-20410, 2011 WL 4072506 (S.D. Fla. Feb. 28, 2011), *report and recommendation adopted,* No. 10-20410-cr, 2011 WL 4055400 (S.D.

Fla. Sept. 13, 2011), the defendant was arrested at approximately 6:18 a.m. and brought to FBI headquarters for processing. *Id.* at *1. While at headquarters, he was processed, met with pretrial services, and interviewed by an agent at approximately 3:00 p.m. The court found that any delay in presentment was caused, in part, by the volume of arrestees to be processed by the FBI. *Id.* at *3. Additionally, the evidence demonstrated that if the arrestees were not received by the United States Marshals before 11:00 a.m., they would not receive a first appearance that day. *Id.* The court reasoned that under the circumstances, including the volume of arrestees to be processed and the court's cut-off time of 11:00 a.m., the delay was reasonable. *Id.*

In *United States v. Smith*, No. 1:09-cr-79-JEC-GGB, 2010 WL 11507508 (N.D. Ga. Jan. 11, 2010), the defendant was arrested in Michigan for a crime allegedly committed in Georgia. The defendant was arrested late at night, interviewed the following morning before the court opened, and presented to the magistrate judge later that day. *Id.* The magistrate judge[5] found that the delay was reasonable because a magistrate was unavailable until the court opened. *Id.*

In *United States v. Harrold*, 679 F. Supp. 2d 1336 (N.D. Ga. 2009), the defendants were arrested between 2:00 and 3:00 a.m. in Mississippi pursuant to arrest warrants from the Northern District of Georgia. *Id.* at 1342. When the Mississippi-based FBI agent learned of the arrests around 7:00 a.m., the agent began coordinating the

---

[5] The defendant changed his plea to guilty before the district court judge considered the objections to the magistrate judge's report. *See* Minute Entry for proceedings held before the Honorable Julie E. Carnes, *United States v. Smith*, No. 1:09-cr-79-JEC-GGB (N.D. Ga. Apr. 19, 2010).

defendants' transport for a first appearance. *Id.* The defendants were held at a correctional facility equally distant from two courthouses. *Id*. The agent first contacted the magistrate judge in one location and learned he was unavailable. The agent then contacted the duty judge in the second location, who could not accommodate a first appearance until the following Monday. After scheduling the first appearance for the following Monday, the FBI agent interviewed the defendants and searched their vehicle. *Id.* The court found the delay before presentment was not unreasonable because the agent "exhaust[ed] his efforts to schedule their initial appearance before a magistrate judge on Friday." *Id.* at 1353. Any delay in presentment, the court reasoned, occurred due to the unavailability of the magistrates, not because of law enforcement. *Id.* at 1355. Accordingly, the Court denied the motion to suppress. *Id.*

In *United States v. Lizarraga-Caceres*, No. 8:07-cr-99-T-23TBM, 2007 WL 1796968 (M.D. Fla. June 21, 2007), the defendants traveled by air from the Eastern Pacific Ocean to Tampa, Florida. They arrived in Tampa in the evening hours, were interviewed by law enforcement that night, and presented to a magistrate judge the following day. *Id.* at *3. The magistrate judge recommended denial of the motion to suppress under Rule 5 but noted that "[h]ad a magistrate judge been available to conduct Rule 5(a) proceedings upon their arrival, this process would likely violate Rule 5." *Id.* at *15. The district court judge adopted the magistrate judge's report and recommendation. *Id.* at *2.

Here, unlike in *Lizarraga-Caceres* or *Smith*, Defendant Quinones arrived in the United States in the morning on Friday, April 3, not in the evening.  Unlike in *Perez*, *Thompson*, or *Harrold*, the courts were open when he arrived, and the Government did not put forth any evidence that a nearby magistrate judge was unavailable on Friday. Unlike in *Aguino-Ramos*, Defendant Quinones was not presented in the same district in which he arrived in the United States.  Further, the Government did not need additional time to determine whether the United States had proper jurisdiction or to marshal necessary evidence.  *Contra Carter*, 484 F. App'x at 457 (finding that delay was reasonable in part due to need to protect the public from dangerous evidence). Importantly, based on the evidence before the Court, the Government planned for Defendant Quinones to arrive in the United States in the morning of Friday, April 3, 2020, but made no attempt to arrange for a first appearance to occur before Monday, April 6, 2020.  The Government did not provide a reason for this pre-planned presentment delay.  Therefore, the undersigned cannot conclude it was necessary or reasonable to delay Defendant Quinones's first appearance until Monday.

Moreover, as explained above, the Government has not shown that Defendant Quinones's first appearance in the Middle District of Florida occurred sooner than it would have in the Southern District of Florida, the district of arrest, as required by Rule 5(c).  Under the totality of the circumstances, the undersigned finds that the Government unreasonably and unnecessarily delayed Defendant Quinones's presentment to a magistrate judge, in violation of Federal Rule of Criminal

Procedure 5. The undersigned therefore recommends that the Motion be granted in part and that Defendant Quinones's April 3, 2020 statement be suppressed. *Corley*, 556 U.S. at 322.

To the extent Defendant Quinones also seeks to suppress a photograph, the undersigned recommends that the request be denied. During the July 16, 2021 evidentiary hearing, Defendant Quinones argued, for the first time, that the Government's violation of Rule 5 also warranted suppression of a photograph of Defendant Quinones taken at the PanEx facility. Defendant Quinones did not raise this issue in his Motion. Defendant Quinones moved only to "suppress all statement(s) made by Mr. Quinones on or after March 11, 2020 – and any other evidence the Government intends to use against him derived therefrom." (Dkt. 167 at 32.) There is no evidence or argument before the Court that the photograph taken at the PanEx facility stemmed from the statement made by Defendant Quinones. The undersigned therefore recommends that the Motion to suppress the photograph be denied. *See, e.g.*, *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-36AEP, 2020 WL 3288026, at *2 n.1 (M.D. Fla. June 18, 2020) (declining to consider new arguments raised for the first time at oral argument); *Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1229 (M.D. Fla. 2018) (noting that an argument not appearing in the proponent's briefing was not properly before the Court).

## B. Fifth Amendment

Defendant Quinones also moved the Court to suppress a certification from the United States Department of State (Dkt. 93).  Defendant Quinones argues that the certification "imports and implicitly reflects an MDLEA Defendant's own statements, or lack thereof, and its usage against an MDLEA defendant is, thus, an unconstitutional violation of his right under the Fifth Amendment." (Dkt. 167 at 23–24.)  It appears that Defendant Quinones raises a facial challenge to the MDLEA statute and the provisions relating to a certification from the State Department.

The MDLEA prohibits persons on board a vessel "subject to the jurisdiction of the United States" from engaging in drug trafficking.  46 U.S.C. § 70503(a).  A vessel may be subject to the jurisdiction of the United States if it is a vessel without a nationality.  46 U.S.C. § 70502(c)(1)(A).  Under the statute, a vessel is without a nationality if the master makes a claim of registry for the vessel and the claimed foreign nation of registry "does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C).  A foreign nation's response to a claim of registry for a vessel is "proved conclusively" by a certification from the State Department.  46 U.S.C. § 70502(d)(2).

The Government filed a State Department certification in this case.  (Dkt. 93.)  The certification states that the Government of the Republic of Colombia could not confirm or deny the nationality of Defendants' vessel.  Additionally, the certification

states that the Government of the Republic of Costa Rica confirmed that the vessel was not registered in Costa Rica.  (Dkt. 93.)

Defendant Quinones alleges that because a State Department certification reflects an MDLEA defendant's statements, the Government's use of the certification is *per se* unconstitutional.  In *United States v. Napa Moreira*, 810 F. App'x 702 (11th Cir. 2020), *cert. denied sub nom. Moreira v. United States*, 141 S. Ct. 627 (2020), the defendant raised a similar argument before the Eleventh Circuit.  *Id.* at 706.  The defendant alleged that the MDLEA did not require federal officials to provide *Miranda* warnings before requesting a claim of nationality or registry from a vessel's crew members.  *Id.* The defendant argued that this procedure was unconstitutional because the "crew member's response may subject him to prosecution in the United States."  *Id.*  The Eleventh Circuit considered the argument as a facial challenge to the provision of the MDLEA that establishes jurisdiction based on the master's failure to make a claim of registry, 46 U.S.C. § 70502(d)(1)(B).  The Court held that a routine stop, boarding, and inspection of a vessel on the high seas by the Coast Guard does not generally rise to the level of a custodial detention requiring *Miranda* warnings.  *Id.* (citing *United States v. Rioseco*, 845 F.2d 299, 302–03 (11th Cir. 1988)).  Accordingly, the Court found that *Miranda* warnings were not required and upheld the statute.

Likewise, to the extent Defendant Quinones contends that a State Department certification is *per se* unconstitutional because it contains a defendant's statements, or lack thereof, Eleventh Circuit precedent forecloses this argument.  The Eleventh

Circuit has determined that a routine stop, boarding, and questioning of a vessel on the high seas is not a custodial interrogation.  *See Napa Moreira,* 810 F. App'x at 706; *United States v. Vigil-Montanel*, 753 F.2d 996, 998 (11th Cir. 1985) ("The situation is analogous to routine interrogation at the border, where the fifth amendment guarantee against self-incrimination is not offended because of the overriding power and responsibility of the sovereign to police national borders.") (punctuation and citation omitted); *United States v. Lueck*, 678 F.2d 895, 899 (11th Cir. 1982) ("Interrogation at the border constitutes one notable exception to the constitutional protection of Miranda.").  Absent a custodial interrogation, *Miranda* warnings are not required, and the Government's use of the certification does not violate the Fifth Amendment privilege against compelled self-incrimination.

To the extent Defendant Quinones argues the State Department certification must be suppressed because it contains his own statements or silence, the argument is similarly without merit.  As explained above, a routine stop, inspection, and boarding by the Coast Guard on the high seas is not a custodial interrogation that would require *Miranda* warnings.  *See Rioseco*, 845 F.2d at 302–03; *United States v. Ortega*, No. 12-20580-cr, 2012 WL 12894242, at *4 (S.D. Fla. Dec. 3, 2012); *United States v. Fontane-Medina*, No. 11-20492-cr, 2011 WL 6826811, at *14 (S.D. Fla. Nov. 27, 2011), *report and recommendation adopted,* No. 11-20492-cr, 2011 WL 6826724 (S.D. Fla. Dec. 28, 2011); *United States v. Manta-Carillo*, No. crim. 11-00103-CB, 2011 WL 3235757, at *1 (S.D. Ala. July 28, 2011), *aff'd,* 491 F. App'x 125 (11th Cir. 2012).   Defendant

Quinones does not argue in the Motion that this interdiction differed in any manner from a routine Coast Guard inspection.  He does not allege that the right of approach questioning was a custodial interrogation or that any statements made during the interdiction were coerced or involuntary.  Therefore, an evidentiary hearing is not required to assess his argument.  *United States v. Horne*, 198 F. App'x 865, 869–70 (11th Cir. 2006) ("Neither motion raised a disputed issue of fact that required resolution in an evidentiary hearing."); *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) ("Defendants are not entitled to an evidentiary hearing based on a 'promise' to prove at the hearing that which they did not specifically allege in their motion to suppress.").

The Fifth Amendment provides that a person shall not be "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  To succeed on a motion to suppress pursuant to the Fifth Amendment privilege against self-incrimination, "a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty.*, 542 U.S. 177, 189 (2004); *see McKathan v. United States*, 969 F.3d 1213, 1223–24 (11th Cir. 2020).  Additionally, statements elicited in response to routine administrative questions fall within the "routine booking questions" exception to *Miranda*.  *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (holding that that questions regarding demographic information were not a custodial interrogation "because the questions were not intended to elicit information for investigatory purposes"); *United States v. Sanchez*, 447 F. Supp. 3d 1280, 1288 (M.D. Fla. 2020), *appeal dismissed,* No. 20-11520-DD, 2020 WL 4211549 (11th

Cir. May 13, 2020) (holding that questions about name and immigration status fall within the booking exception).

Moreover, it is well settled that whether a vessel is subject to the jurisdiction of the United States is not an element of an offense under the MDLEA. *United States v. Tinoco*, 304 F.3d 1088, 1112 (11th Cir. 2002) ("This is because the jurisdictional provision [of the MDLEA] is not a traditional element, or otherwise an essential ingredient, of a criminal offense."); *see* 46 U.S.C. § 70504(a); *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020). A voluntary communication that merely relates to the assertion of jurisdiction is not, without more, subject to Fifth Amendment protection. *See United States v. Sweeting*, 933 F.2d 962, 965 (11th Cir. 1991) ("An officer's request for 'routine' information for booking purposes is not an interrogation under *Miranda,* even though that information turns out to be incriminating.") (internal punctuation and citation omitted).

Defendant Quinones does not allege that he was in custody or otherwise compelled or coerced to make a statement. Indeed, Defendant Quinones maintains that he was not asked to make a claim of nationality for the vessel. (Dkt. 167 at 6–7.) Similarly, he does not contend that he claimed Colombian or Costa Rican nationality for the *Divino Nino Jesus*. Thus, Defendant Quinones does not allege that he performed a communicative act that is reflected in the State Department certification. As such, there is no basis to suppress the State Department certification under the Fifth Amendment. Insofar as Defendant Quinones seeks to suppress statements made by

his codefendants, he lacks standing to do so.  *United States v. Ayers*, 615 F.2d 658, 660 (5th Cir. 1980) (noting that the Fifth Amendment privilege against self-incrimination is "purely personal"); *United States v. Dowdy*, 486 F.2d 1042, 1043 (5th Cir. 1973) ("As this court has previously held, one cannot assert in his own defense the denial of another's right against self-incrimination.").

Finally, Defendant Quinones also contends that in "every MDLEA seizure," the Coast Guard unconstitutionally deprives detainees of their clothing, property, and liberty without due process of law.  (Dkt. 167 at 4, 23.)  Defendant Quinones appears to raise a constitutional challenge the applicable Coast Guard detention policies.  However, Defendant Quinones does not explain how these detention policies relate to suppression of his statements.  Similarly, he does not offer any authority to support the implied assertion that suppression of incriminating statements is the proper remedy for the alleged due process violation.  Defendant Quinones does not request any other remedy.   In the absence of any authority to warrant the requested relief, the undersigned recommends that the Motion be denied without prejudice in this regard.

## C. Privilege of Habeas Corpus

Defendant Quinones argues that the Government's delay in holding him at sea for multiple weeks unconstitutionally suspended his privilege of the writ of habeas corpus in violation of Article I, Section 9, Clause 2 of the United States Constitution ("Suspension Clause").   Defendant Quinones submits that this violation warrants suppression of all statements made by him.  The Government argues in response that

the remedy for an unconstitutional suspension of the privilege is to permit the filing of a petition of a writ of habeas corpus, not suppression of statements.  (Dkt. 203.)

Article I, Section 9, Clause 2 of the Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  Defendant Quinones does not provide authority to support the assertion that the remedy for the alleged violation of the Suspension Clause in this proceeding would be suppression of his statements.  The primary authority he relies on, *Boumediene v. Bush*, 553 U.S. 723 (2008), does not suggest that suppression is an available remedy.  The petitioners in *Boumediene* were alien enemy combatants held at Guantanamo Bay, Cuba.  The petitioners challenged the Detainee Treatment Act of 2005, which proscribed procedures for review of a detainee's status.  *Id*. at 733.  The Supreme Court held that the alien detainees had the privilege of habeas corpus and that the Detainee Treatment Act procedures were not an adequate substitute.  *Id.* at 733, 771–72, 792, 795.

Similarly, the concurring opinion by Chief Judge Rosenbaum in *United States v. Cabezas-Montano*, 949 F.3d 567 (11th Cir. 2020) does not support Defendant Quinones's request for relief.  In this opinion, Judge Rosenbaum generally suggests that lengthy detentions at sea may be unconstitutional and in violation of the Suspension Clause.  *Id.* at 615.  Judge Rosenbaum does not opine that the remedy for the alleged violation would be suppression of a detainee's statements.  Rather, Judge Rosenbaum states as follows:

> As a practical matter, such a right [to habeas corpus] may not amount to much. While an MDLEA detainee is in custody on a government vessel—even assuming he has the knowledge to prepare a petition seeking habeas—he may not have a way to actually file such a petition. As a result, an MDLEA detainee's habeas rights might rely on whether others have knowledge of the detention and are in a position to be able to file a habeas petition on behalf of the detainee. Of course, even if, as a practical matter, a remedy is unattainable, that does not relieve the government of its obligation to comply with the Constitution.

*Id.* at 617 n.5.  In the absence of any authority, the Court cannot conclude that the alleged deprivation would compel the suppression of Defendant Quinones's statements.  Therefore, the undersigned recommends that the Motion be denied without prejudice in this regard.

### D. Eighth Amendment

Defendant Quinones also contends that his detention by the Coast Guard "exceed[ed] the bounds of decency in violation of the Eighth Amendment." (Dkt. 167 at 18–20.)  To the extent Defendant Quinones contends that the length and conditions of his detention at sea should result in suppression of his statements, he already moved to suppress his statement on the same factual basis.  (Dkt. 53.)  That motion was denied.  (Dkt. 231.)  In any event, "[i]t is well settled that the Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees." *Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994); *see Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994).  Finally, Defendant Quinones

does not offer any authority to establish that the proper remedy for an alleged violation of the Eighth Amendment would be suppression of his statements.  The undersigned therefore recommends that the Motion be denied without prejudice in this regard.

### CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that:

1. Defendant Quinones's Second Motion to Suppress Statements (Dkt. 167) be **GRANTED** in part and **DENIED** in part as set forth herein.

2. The Motion be granted insofar as Defendant Quinones's statements to United States Federal Bureau of Investigation Special Agent Luis C. Lima on April 3, 2020 be **SUPPRESSED** due to the Government's violation of Federal Rule of Criminal Procedure 5.

3. The Motion be denied insofar as Defendant Quinones seeks to suppress a photograph of himself taken at the PanEx facility.

4. The Motion be denied insofar Defendant Quinones seeks to suppress the State Department certification (Dkt. 93) due to alleged violation of the Fifth Amendment privilege against self-incrimination.

5. The Motion be denied without prejudice insofar as Defendant Quinones seeks to suppress his statements due to alleged violations of due process, the Suspension Clause, and the Eighth Amendment.

**IT IS SO REPORTED** in Tampa, Florida, on August 16, 2021.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Charlene E. Honeywell
Counsel of Record