**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

v.                                                    CASE NO: 8:20-cr-138-CEH-JSS

DILSON DANIEL ARBOLEDA
QUINONES

_____

## ORDER

This cause comes before the Court on the Report and Recommendation (Doc. 269), issued by Magistrate Judge Julie S. Sneed on August 16, 2021.  In the Report and Recommendation, Magistrate Judge Sneed recommends Defendant Dilson Daniel Arboleda Quinones's ("Arboleda Quinones" or "Defendant") Motion for Release from Custody or, in the alternative, to Suppress all Statements Obtained from Him for Unconstitutional Treatment and/or Unconstitutional Suspension of the Writ of Habeas Corpus and/or Violation of Federal Rule of Criminal Procedure 5; Motion to Exclude and/or Suppress the State Department Certification as its Use Under 46 U.S.C. § 70502(c)(2)(B) Impermissibly and Unconstitutionally Violates the Separation of Powers Doctrine and/or is Fatally Inconsistent with 46 U.S.C. § 70504(a) and this Court's Supervisory Power (Doc. 167) ("Second Motion to Suppress") be granted in part and denied in part. Specifically, the Magistrate Judge recommended Arboleda Quinones's statements to United States Federal Bureau of Investigation Special Agent Luis C. Lima on April 3, 2020, be suppressed due to the Government's violation of Federal Rule of Criminal Procedure 5's presentment requirement. Doc. 269 at 40. All

parties were furnished copies of the Report and Recommendation and were afforded the opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). On August 30, 2021, the United States filed its "Objections to Report and Recommendations on Motion to Suppress Statements." Doc. 277. On September 7, 2021, Arboleda Quinones filed a Response to Government Objections (Doc. 298), and on September 8, 2021, Arboleda Quinones filed an Amended Response to Government Objections (Doc. 299). Upon careful consideration of the Report and Recommendation, the Government's Objections, the response and amended response to the objections, and upon this Court's independent examination of the file, it is determined that the Government's Objections should be overruled, the Report and Recommendation adopted, and the Defendant's Second Motion to Suppress be granted in part and denied in part.

## I.  BACKGROUND

A March 19, 2020 indictment obtained by the Chief of Transnational Organized Crime Section charged Arboleda Quinones and two co-defendants (collectively "Defendants") with possession and conspiracy to possess with intent to distribute 5 kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), 18 U.S.C. §§ 2 and 21, and 21 U.S.C. § 960(b)(1)(B)(ii). Doc. 1. The charges arose after Arboleda Quinones and his co-defendants were interdicted in international waters of the Eastern Pacific Ocean by the United States Coast Guard on March 10, 2020, and a search of their go

fast vessel ("GFV") led to the discovery of 430 kilograms of cocaine hidden under false decking of the GFV. Docs. 120-1 at 1–2; 124 at 142–43.[1]

After the interdiction, Arboleda Quinones and the other members of the GFV were treated as detainees and taken aboard the United States Coast Guard Cutter *Mohawk* ("*Mohawk*"). Docs. 120-1; 121-2. On March 10, 2020, prosecution of the case was awarded to Panama Express ("PanEx") Strike Force, a multi-agency counter-narcotics group which includes the U.S. Attorney's Office for the Middle District of Florida ("MDFL") (Doc. 120-4 at 1). As of March 12, 2020, PanEx individuals began the planning process, including paperwork, for the detainees' arrival in South Florida. Doc. 274 at 37. By March 16, 2020, it was determined the Defendants would be indicted in the MDFL and transported to Tampa, Florida where they would be prosecuted. Doc. 120-4 at 4. As of March 18, 2020, the plan was for the Defendants to arrive in Ft. Lauderdale, Florida on April 3, 2020, and be transported to Tampa by PanEx personnel. Doc. 120-4 at 1. On March 29, 2020, the Defendants were transferred from the *Mohawk* to the Coast Guard Cutter *Hamiton* ("*Hamilton*") (Doc. 261-2). Between 7:30 a.m. and 8:00 a.m. on the morning of Friday, April 3, 2020, the *Hamilton* arrived into Port Everglades. Doc. 262-1 at 12.

At a July 16, 2021 hearing before the Magistrate Judge, Supervisory Special Agent for Homeland Security Investigations ("HSI") Richard Dunn ("Special Agent Dunn") testified that PanEx is a multi-agency counter-narcotics group comprised of

---

[1] The Magistrate Judge took judicial notice of the testimony and evidence from the October 20, 2021, hearing. Doc. 269 at 4.

HSI, the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), the Coast Guard Investigative Services ("CIS"), the U.S. Marshals Service, and the U.S. Attorney's Office, that investigates maritime narcotics trafficking.   Doc. 274 at 10–11. As a supervisor at PanEx, Special Agent Dunn participates in coordinating transport of detainees. *Id.* at 11.   The coordination involves, among other matters, determining the date and time the detainees will arrive on the Cutter, coordinating the transport of the detainees from one place to the other, and coordinating which jail facilities will be willing to take the detainees, given COVID-19 concerns. *Id.* at 12. Here, Special Agent Dunn coordinated the HSI agents that were sent to pick up the Defendants in South Florida, along with coordinating the other agencies of PanEx and the contract company for the Pinellas County Jail. *Id.* at 16. The individuals he coordinates are based out of Tampa and are experienced dealing with MDLEA detainees.  *Id.* at 16–17. According to Special Agent Dunn, the pick-up of the prisoners required six to eight people in multiple vehicles. *Id.* at 72. And at least eight to ten individuals are needed for processing, DNA, sorting the non-drug evidence, and interviews. *Id.*

Special Agent Dunn identified and testified about a March 30, 2020 email (Doc. 259-1) that he received from Deron Mangiocco, operations manager for PanEx. In the email, Agent Mangiocco identifies the three Defendants by name and nationality and states they will be arriving to PanEx on "Friday April 3, 2020 and will be booked into Pinellas County jail for Monday initial appearances." Doc. 259-1 at 1. The plan was to take the Defendants to Pinellas County Jail because the Jail was willing to take any

prisoners regardless of COVID-19 status. Doc. 274 at 28. The agents were not able to test the Defendants for COVID-19 when they came off the *Hamilton*, but Special Agent Dunn testified that none of the prisoners had COVID as far as he knew. *Id.* at 71.[2] Prior to the pandemic, the most common means of transporting passengers from Port Everglades to Tampa was by aircraft, but due to the pandemic, they needed proof of a negative COVID-19 test to fly, which they did not have. *Id.* at 25. So, alternatively, they used vans to transport the prisoners from Port Everglades to Tampa. *Id.* at 26.

Special Agent Dunn could not recall when the Cutter was due to arrive in Port Everglades (Doc. 274 at 22), but he testified that by the time the detainees were off the Cutter, they had their personal protective equipment ("PPE"), and they were secured appropriately, they left for Tampa around 9:40 or 9:50 a.m. Doc. 274 at 29. He testified that the immigration processing would have been done by Customs and Border Protection ("CBP") first. *Id.* In this case, CBP processing was done at the dock due to COVID-19 considerations. *Id.* Special Agent Dunn, Agent Carrasquilla, and supervisors took six of the prisoners in two transport vans to Tampa. *Id.* at 29–31. Four other prisoners from the Cutter were taken by another organization to the Southern District of Florida. *Id.* at 30.

According to Special Agent Dunn, on the way to Tampa, they made a stop at the HSI office in Fort Myers around 11:15 a.m. to allow the prisoners to eat, use the bathroom, and stretch their legs. *Id.* at 30–31. He believes they were back on the road

---

[2] Agent Mangiocco noted that the Coast Guard was monitoring the detainees' temperatures, and as of the date of his email, there were no high temperature readings. Doc. 259-1 at 1.

before 12:00 noon. He testified that they arrived at the PanEx facility around 1:15 or 1:30 p.m. *Id.* at 31. Once at PanEx, processing of the detainees consisted of DNA gathering, non-drug evidence collection and separation, prisoner interviews, paperwork for U.S. Marshals Service custody, pretrial services, and other paperwork.[3] *Id.* at 31. While the processing theoretically could have been done at the pier at Port Everglades, Special Agent Dunn testified that it is less safe, less secure, and less efficient. *Id.* at 32. It is not standard policy to transport prisoners from PanEx straight to a courthouse for their first appearance. *Id.* at 56.  Evidence showed that Arboleda Quinones was interviewed around 2:00 p.m. by Agent Lima at the PanEx facility in Seminole, Florida. Doc. 124 at 189.

The Government introduced into evidence an email chain between a Tampa magistrate judge's courtroom deputy ("CRD") and several assistant U.S. attorneys dated April 3, 2020. The email chain begins at 2:44 p.m. in which the CRD emails two AUSAs stating, "A boat is coming in today and will be seen on Monday. Do you have any idea what cases are coming in. I can't seem to locate them in CM/ECF." Doc. 259-2 at 3. AUSA Dan Baeza forwards the email to AUSA Joseph Ruddy at 2:47 p.m. At 4:15 p.m. AUSA Ruddy asks the CRD what time initial appearances will be on Monday, April 6, 2020, to which she responds that the proceedings will take place at 2:00 p.m. via Zoom videoconference on Monday. *Id.* at 1–2. In an email later that day,

---

[3] A copy of the immigration detainer for Arboleda Quinones was entered into evidence showing that he was processed by HSI on April 2, 2020, the day before he arrived in the United States. Doc. 261-5. And, as stated above, immigration processing was done at the dock by CBP. Doc. 274 at 29.

the CRD indicates the court is still testing the Zoom system, but that more details will be known on Monday. *Id.* at 1. Arboleda Quinones was seen for a first appearance before a Tampa magistrate judge on Monday April 6, 2020. *See* Doc. 20 (Clerk's minutes reflecting an initial appearance hearing took place 2:16 p.m. to 2:34 p.m.).

On January 22, 2021, Arboleda Quinones moved to suppress all statements he made to law enforcement on or after March 11, 2020, due to an alleged Rule 5 violation by the Government. Doc. 167. The Government filed a response in opposition (Doc. 171), and Arboleda Quinones replied (Doc. 187). The Magistrate Judge held a hearing on the second motion to suppress on July 16, 2021 (Doc. 274) and thereafter granted the motion insofar as it was recommended that Arboleda Quinones's statements to Special Agent Lima on April 3, 2020, be suppressed due to the Government's violation of Federal Rule of Criminal Procedure 5 (Doc. 269).

A.  *Arboleda Quinones's Second Motion to Suppress Statements (Doc. 167)*

On January 22, 2021,[4] Arboleda Quinones filed a second motion seeking to suppress[5] his statements to law enforcement.[6] Doc. 167. In pertinent part, Arboleda

---

[4] On December 31, 2020, Arboleda Quinones filed a motion requesting permission to file an untimely pretrial motion, namely, the Second Motion to Suppress. Docs. 134, 134-1. On January 22, 2021, the Magistrate Judge granted in part (Doc. 166) the Defendant's motion to file the belated second motion to suppress and directed that the motion (Doc. 134-1), attached as an exhibit, be filed as a separate docket entry. The second motion to suppress was re-filed as a separate docket entry on January 22, 2021. *See* Doc. 167.

[5] Arboleda Quinones previously moved to suppress statements he made to law enforcement, arguing his statements were not made voluntarily and he did not validly waive his *Miranda* rights. Doc. 53. The Court denied his first motion to suppress. Doc. 231.

[6] Arboleda Quinones raised other issues in the motion, but in allowing the untimely motion to be re-filed, the Magistrate Judge permitted it only as it related to Defendant's argument the Government failed to comply with Fed. R. Crim. P. 5. *See* Doc. 166 at 19.

Quinones argues in this motion that the Government's failure to comply with Federal Rule of Criminal Procedure 5's presentment requirement mandates suppression of the statements he made before being brought before a Magistrate Judge. Rule 5(a)(1) requires that, upon arrest, a defendant must be brought before a Magistrate Judge "without unnecessary delay." Fed. R. Crim. P. 5(a)(1). Arboleda Quinones argues the Government delayed bringing him before a Magistrate Judge and fails to satisfy its burden to establish that its delay was necessary. After being arrested upon his arrival in South Florida, Arboleda Quinones was required to be presented to the court for a first appearance in the district of his arrest, *i.e.*, the Southern District of Florida, or in an adjacent district if the appearance could occur more promptly there. *See* Fed. R. Crim. P. 5(c)(2). Arboleda Quinones arrived in South Florida on the morning of Friday April 3, 2020 but was not presented to a magistrate judge for a first appearance until the afternoon of Monday April 6, 2020 in the Middle District of Florida.

Arboleda Quinones asserts he and his co-Defendants were taken into custody on March 11, 2020 after being intercepted by the U.S. Coast Guard eighty-seven miles from Panama.   He was transported on the U.S. Coast Guard cutter *Mohawk* and then the *Hamilton* before arriving on April 3, 2020 in Port Everglades, Florida, at approximately 8:00 a.m. By his account, he was not brought before a Magistrate Judge for a total of 27 days.

Specifically, as to the delay upon his arrival in the United States, Arboleda Quinones argues that the PanEx agents failed to bring him before a magistrate judge in any one of the four federal courthouses that were "nearby, stopped at, driven past,

or diverted" at various points of the day on Friday April 3, 2020. Doc. 167 at 28. He contends that he could have been seen by a magistrate judge in Ft. Lauderdale or Miami after disembarking at Port Everglades; he could have been seen in the Fort Myers courthouse when the PanEx agents stopped for a restroom and food break on the drive to Tampa; or he could have been seen in the Tampa federal courthouse rather than going directly to the PanEx facility in Seminole, Florida, where he was interrogated. Arboleda Quinones submits that the Government fails to carry its burden of establishing that the delay until Monday April 6 was reasonable, and as a result, he argues any statements garnered from the unreasonable delay must be suppressed.

B.     The Government's Response (Doc. 171)

The Government opposes the second motion to suppress, arguing that federal courts have found delays for purposes of transportation of the defendant, jurisdictional determinations, and availability of a magistrate judge to be legitimate and necessary and not in violation of Rule 5's presentment requirement. Doc. 171. The Government concedes that Defendant was detained 26 days before being brought before a magistrate judge but argues that the delay was reasonable and necessary. Relevant to the issues here, the Government submits that the weekend delay from Defendant's Friday April 3 arrival to his being seen by a magistrate judge one business day later on Monday April 6 is reasonable under the circumstances. Specifically, the Government points to the fact that the April 3rd arrival was shortly after a national health emergency was declared due to COVID-19. The Government cites to then Chief Judge Merryday's Administrative Order of March 29, 2020, recognizing that "the Judicial

9

Conference of the United States determined that emergency conditions due to the national emergency declared by the President have materially affected and will materially affect the functioning of the federal courts generally." Doc. 171 at 11 (quoting *In re: The National Emergency Declared on March 13, 2020 Administrative Order*, MDFL, Case No. 8:20-mc-25-SDM (Mar. 29, 2020). The impact, the Government argues, was that many hearings were necessarily continued to evolve with videoconferencing technology and to adapt to the national health crisis. Thus, the Government urges it was important to maintain the original plan as a change in logistics given the emerging situation would not guarantee a more favorable outcome. While sticking with the original plan may have involved a minimal delay, the Government contends the delay was not unreasonable given the circumstances associated with administrative immigration processing, the unavailability of a magistrate judge over the weekend, and the early days of a global pandemic.

C.   *Arboleda Quinones's Reply (Doc. 187)*

In his reply, Arboleda Quinones notes that *Mohawk* Officer Saenz prepared and transmitted the case document package for grand jury presentation in Tampa and arrest warrants were issued on March 19, 2020. Thus, he argues that as early as March 19, the agents and Government were preparing for the Defendants' arrival in Tampa on April 3, 2020. In response to the Government's arguments that hearings were being continued and delays occurring due to COVID-19 protocols, Defendant contends the Government fails to present any evidence of this. Further, he argues that the Government's reliance on Judge Merryday's administrative order provides no relief as

the order did not authorize delayed initial appearances. And, in fact, the Fort Myers MDFL Administrative Order specifically states the opposite, finding "[c]riminal matters before Magistrate Judges, such as initial appearances, arraignments, detention hearings, and search-warrant requests, shall continue to take place in the ordinary course. Magistrate Judges may conduct criminal proceedings by videoconference consistent with the Federal Rules of Criminal Procedure." Doc. 187 at 4 (quoting Judge Chappell's Administrative Order in 2:20-mc-3-SPC, dated Mar. 19, 2020). Thus, Arboleda Quinones argues the Government offers no explanation for its blatant, intentional violation of Rule 5, and where, as here, the detention was prolonged for purposes of interrogating a defendant, the elicited statements must be suppressed.

### D.   The Magistrate Judge's Findings and Recommendations (Doc. 269)

At the evidentiary hearing on Arboleda Quinones's Second Motion to Suppress held July 16, 2021, the Magistrate Judge heard testimony from Special Agent Dunn, United States Coast Guard Lieutenant Karl Gunther ("Lieutenant Gunther"), and United States Marshals Service Supervisory Deputy Marshal Michael McClung ("Deputy McClung"). Additionally, the Magistrate Judge admitted into evidence: (1) a March 30, 2020 email discussing Defendants' arrival in the Middle District of Florida (Doc. 259-1); (2) email correspondence dated Friday, April 3, 2020 regarding Defendants' first appearance (Doc. 259-2); (3) a photograph (Doc. 261-1); (4) a Coast Guard communique (Doc. 261-2); (5) two Publix receipts (Doc. 261-3); (6) a Response to Action Request form (Doc. 261-4); (7) administrative processing documents (Doc. 261-5); and (8) an email correspondence dated Friday, April 3, 2020, regarding

Defendants' first appearance (Doc. 261-6). The court admitted two additional exhibits containing confidential law enforcement information under seal.  (Docs. 262-1, 262-2). The Magistrate Judge took judicial notice, without objection, of maps reflecting the distance between Port Everglades and the federal courthouses in Ft. Lauderdale, Miami, and Fort Myers (Doc. 274 at 68); the testimony and evidence from the October 2020 evidentiary hearing (Doc. 274 at 109–10); that the federal courthouses in the Southern and Middle Districts of Florida are generally open during the daytime hours during the week (Doc. 274 at 111); the administrative order for COVID-19 protocols in effect on April 3, 2020 for the Southern and Middle Districts of Florida (Doc. 274 at 111–12); that on April 3, 2020, the United States was affected by the COVID-19 global pandemic (Doc. 274 at 24); and the mission of the Pretrial Services (Doc. 274 at 40).

Based on the testimony and evidence presented, the Magistrate Judge determined that Arboleda Quinones established that he could have received his first appearance on Friday April 3, 2020 in the Southern District of Florida. Doc. 269 at 13. Additionally, Arboleda Quinones established that the courthouses in Miami, Ft. Lauderdale, Fort Myers, and Tampa were open and conducting judicial business on April 3, 2020. In contrast, the Magistrate Judge found the Government presented no evidence that a magistrate judge was unavailable for a first appearance on Friday April 3, 2020, in any one of those four courthouses. Further, the evidence showed that the original plan was for the Defendants to arrive on April 3, 2020 to PanEx for processing but not be presented until Monday April 6, 2020. While processing a defendant may

be cause for delay, the Magistrate Judge found the Government presented no evidence to establish why Arboleda Quinones could not have been processed in the Southern District of Florida or in Fort Myers or why Arboleda Quinones could not have been presented to a magistrate judge in Tampa after his processing. The Magistrate Judge found that the evidence did not reflect that the pandemic impacted the Government's ability to promptly present Arboleda Quinones to the nearest available magistrate judge upon arrival in the United States. The Magistrate Judge further found the Government failed to show that Defendant's first appearance in the Middle District of Florida on April 6, 2020, occurred sooner than it would have in the Southern District of Florida, the district of arrest, as required by Rule 5(c). Thus, under the totality of the circumstances, the Magistrate Judge concluded the Government unreasonably and unnecessarily delayed Arboleda Quinones's presentment to a magistrate judge in violation of Federal Rule of Criminal Procedure 5(a), warranting suppression of the statements given by Arboleda Quinones to PanEx agents on April 3, 2020. Due to the Rule 5(a) violation, the Magistrate Judge recommends Arboleda Quinones's Second Motion to Suppress be granted as it pertains to his April 3, 2020 statements to Agent Lima.[7]

---

[7] The Magistrate Judge declined to recommend exclusion of a photograph due to the Rule 5 violation because the issue of suppressing the photograph was raised by Defendant for the first time at the hearing, Defendant had only moved to suppress statements and evidence derived therefrom, and the Magistrate Judge concluded there was no evidence that the photograph stemmed from any statement by Arboleda Quinones. Doc. 269 at 31. This finding and recommendation has not been objected to by any party.

In reaching these conclusions, the Magistrate Judge considered the testimony of Agent Dunn and found his testimony to be credible, consistent, and specific as to the sequence of events.

E.    *The Government's Objections*[8]

The Government now objects to the Magistrate Judge's factual findings and analysis contained in the Report and Recommendation that concluded Arboleda Quinones's statements made to Agent Lima should be suppressed. Specifically, the Government challenges the Magistrate Judge's factual findings and legal conclusion that:

> the Government did not provide any evidence to show that it was necessary to transport Defendant Quinones to Tampa for processing, or that processing could not have occurred in the Southern District of Florida or in Fort Myers. Likewise, no evidence established that Defendant Quinones could not have been presented to a magistrate judge on April 3 after his processing in Tampa.

Doc. 277 at 3 (quoting Doc. 269 at 24). The Government argues it presented evidence that it was necessary to transport the Defendants to the Middle District of Florida for processing and that a magistrate judge was not available on April 3, 2020, in either the Southern or Middle Districts of Florida. Thus, it urges that the one business-day delay in Defendant's presentment was not unreasonable given the circumstances. Lastly, the Government contends that suppression is not a remedy for a violation of Rule 5(c)

---

[8] Only the Government filed an objection to the report and recommendation. Arboleda Quinones did not raise any objections to the Magistrate Judge's factual findings or legal conclusions.

absent a finding that the delay was unnecessary and unreasonable, which the Government argues was not the case given the complex transport plan, the need to coordinate with multiple agencies, the need for the proper personnel and equipment for processing, and the uncertainty of coordinating all the moving parts in the midst of a global pandemic. According to the Government, law enforcement formulated a plan, with knowledge of the courts, to ensure the safe and secure appearance of the Defendants in the Middle District of Florida, and it was not unreasonable to carry out the original plan given the uncertainties of the COVID-19 environment.

F.    *Defendant's Responses to the Government's Objections (Docs. 298, 299)*

On September 7, 2021, Arboleda Quinones filed a response to the Government's objections to the Magistrate Judge's report and recommendations, and on September 8, 2021, he filed an amended response. (Docs. 298, 299). In his amended response, Arboleda Quinones argues the Government knew about and planned for Defendant's April 3, 2020 arrival in Miami as early as March 16, 2020, and yet failed to make any effort for Arboleda Quinones to have a first appearance before any court on that day. Instead, Defendant argues, the agents did exactly what Rule 5 is intended to prevent in that they unnecessarily delayed his presentment in order to interrogate him. Arboleda Quinones submits he has proffered evidence to support that he could have been presented to a magistrate judge in any one of four courthouses that were open and operational that day, but he was not, in contravention of Rule 5(a).

Arboleda Quinones further argues that the Government fails to accept its responsibility and burden under Rule 5 to present him to a magistrate judge without

15

unnecessary delay. Arboleda Quinones argues the delay was intentional, and the Government's reliance on Judge Merryday's administrative order is misplaced because the order does not authorize a delay in first appearances for criminal defendants due to the pandemic. He contends the Government offers no reasonable explanation for the delay in his presentment. He argues, therefore, the Rule 5(a) violation renders inadmissible any evidence, including any statements by him, obtained during the illegal detention.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge.  The district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).  The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation.  Fed. R. Civ. P. 72(b)(3).  The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions.  *Id*. The objections to a magistrate judge's recommendation and report must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019).

## III.   DISCUSSION

   *A.   MDLEA*

Under the Maritime Drug Law Enforcement Act ("MDLEA"), it is unlawful for any person on board a covered vessel to knowingly possess with the intent to distribute a controlled substance. 46 U.S.C. § 70503(a). The Court notes that the MDLEA does not prohibit the government from taking offenders to Florida after an interdiction in international waters. *United States v. Cabezas-Montano*, 949 F.3d 567, 591 (11th Cir.), *cert. denied sub nom. Palacios-Solis v. United States*, 141 S. Ct. 162, 207 L. Ed. 2d 1098 (2020), and *cert. denied sub nom. Guagua-Alarcon v. United States*, 141 S. Ct. 814, 208 L. Ed. 2d 398 (2020), and *cert. denied*, 141 S. Ct. 814, 208 L. Ed. 2d 398 (2020). A person violating the MDLEA "may be tried in any district," "if the offense was begun or committed upon the high seas," as was the case here. 46 U.S.C. § 70504(b)(2).

B.    *Rule 5 Presentment*

Rule 5(a)(1)(A), Federal Rules of Criminal Procedure, expressly provides that "[a] person making an arrest within the United States must take the defendant *without unnecessary delay* before a magistrate judge, unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(A) (emphasis added). Arboleda Quinones bears the burden of establishing that the delay before presentment was unnecessary. *Cabezas-Montano*, 949 F.3d at 592 (defendant carries the burden to show the particular delay here was "unnecessary" and thus a Rule 5(a) violation). What constitutes an "unnecessary delay" is determined based upon the facts and circumstances of each case. *See* Notes of Advisory Committee on Rules to Fed. R. Crim. P. 5. The reason for the delay is one of the factors considered. *United States v. Diaz*, 156 F. App'x 223, 225 (11th Cir. 2005) (citing *United States v. Purvis*, 768 F.2d 1237, 1239 (11th Cir. 1985)).

In *Purvis*, the Eleventh Circuit expressly addressed "unnecessary delay" under Rule 5(a)(1). 768 F.2d at 1238-39. The Court determined that various factors are considered in determining whether a delay was unnecessary, including: (1) the distance between the location of the defendant's arrest in international waters and the U.S. port he was brought to; (2) the time between the defendant's arrival at the U.S. port and his presentment to the magistrate judge; (3) any evidence of mistreatment or improper interrogation during the delay; and (4) any reason for the delay, like exigent circumstances or emergencies. *Id.*

Pertinent to the issues here are the Court's consideration of the second and fourth factors. Arboleda Quinones arrived at a U.S. port in the Southern District of Florida on the morning of Friday, April 3, 2020, and was not presented for a first appearance until he was seen by a Tampa magistrate judge in the Middle District of Florida on the afternoon of Monday, April 6, 2020. By the Government's account, the delay was only one business day, which it urges was reasonable considering the logistics and the global pandemic. Indeed, the Court recognizes that since courthouses are closed on the weekends, such delays may be found to be reasonable and necessary, but the analysis is fact-driven.[9] Here, the Government contends exigent circumstances

---

[9] In support of its argument that the weekend delay here was not unreasonable, the Government cites *United States v. Portocarrero-Angulo*, No. 3:16-CR-02555-BEN-01, 2017 WL 3283856, at *8 (S.D. Cal. Aug. 1, 2017), in which that court found a 20-day delay between Coast Guard interdiction and presentment in San Diego did not violate Rule 5(a) even though defendants were questioned on a Friday evening and presented to a magistrate the next Monday. Of significance in *Portocarrero-Angulo*, a standing General Court Order required the U.S. Marshals Service to ensure that every detainee being brought before the court has been screened for and determined not to have transmittable tuberculosis. The court there concluded

supported its decision to make a plan and stick with it. However, as observed by the Magistrate Judge and as supported by the evidence, there is no indication that COVID-19 or the existence of a global pandemic prevented or significantly impacted the timing of Defendant's initial appearance. Indeed, Chief Judge Merryday's administrative order specifically provided that first appearances and other proceedings could be accomplished by videoconference. Similarly, the administrative order from Fort Myers indicated that initial appearances, arraignments, detention hearings, and search-warrant requests, shall continue to take place in the ordinary course. Special Agent Dunn testified that the Defendants were not suspected of having COVID-19. And although the Government made vague references to the pandemic resulting in delayed hearings, it proffered no evidence of such delays or continuances. While the pandemic necessitated the Defendants travel by van rather than airplane, this fact was known at least a week in advance and planned for.

Other factors the Government points to regarding the delay was the need to coordinate multiple agencies to implement a safe and secure plan to transport the detainees. But the coordination, for the most part, was accomplished weeks in advance, including some of the processing paperwork. Yet, at no time in the planning,

---

that the need to complete this screening made the delay between defendant's arrival in San Diego on Friday afternoon and his presentment the next Monday reasonable. In contrast, there are no facts presented by the Government here to explain the planned delay in presentment. To the extent the Government argues COVID-19 concerns delayed presentment, there was no evidence presented that the Defendants had or were suspected as having COVID-19, and in any event, video conferencing was an option at that time that appears to not have been considered.

even when the Government knew that the Defendants were arriving to a U.S. port on the morning of Friday, April 3, 2020, did the Government contemplate or make any effort to promptly present the Defendants to a magistrate judge in accordance with the requirements of Rule 5. What it did plan for was Defendants' interrogation at PanEx on the afternoon of April 3.

### C. Objections to the Factual Findings

The Government challenges certain factual determinations made by the Magistrate Judge. Specifically, the Government objects to the Magistrate Judge's findings (1) that the Government did not present evidence to show it was necessary to transport Defendant Quinones to Tampa for processing or that processing could not have occurred in the Southern District of Florida or in Fort Myers; and (2) that the Government did not present evidence to establish that Defendant Arboleda Quinones could not have been presented to a magistrate judge on April 3 after his processing in Tampa. The Court will address the findings in reverse order.

### a. Failure to Present to a Magistrate Judge on April 3, 2020

The Government argues that presentment could not have occurred earlier given the logistics of coordinating multiple agencies and multiple foreign Defendants during a global pandemic. The Government contends it made and executed its plan taking into consideration COVID-19, processing delays, and an intervening weekend when the courts are closed. The Government cites *United States v. Lizarraga-Caceres*, No. 8:07-CR-99-T-23TBM, 2007 WL 1796968, at *15 (M.D. Fla. June 21, 2007) for the proposition that many personnel must be available and coordinated to effectuate a first

appearance. In that case, the court was troubled by the arrival late in the day and the subsequent interrogation in the evening before presentment to a magistrate judge the next morning. However, the court found no Rule 5(a) violation because there was no evidence the delay was intentional:

> Clearly, interrogation of these Defendants was the first order of business on the government's agenda once they arrived in Tampa. The record shows the effort was well coordinated and purposeful, as one of the agents testified they were there at the DEA office to "interview, fingerprint and photograph." Whether the arrival into Tampa was planned to occur after the adjournment of the court for the day is unknown. Were it shown to be intentional, a different conclusion might result.

*Lizarraga-Caceres*, 2007 WL 1796968, at *15 n.7. While it was unclear as to the expected arrival time in Tampa in that case, here, the plan all along was for the Defendants not to be seen for their first appearance until Monday, April 6, 2020. There is no evidence that any effort was made by the agents or the Government to "take the defendant[s] without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a)(1). To the contrary, the evidence supports that the delay in having these Defendants seen not until Monday April 6, 2020, was intentional and planned as evidenced by the March 30, 2020 email communication establishing the plan. There is no dispute that the Defendants were due to arrive to the United States into Port Everglades, and therefore be arrested, on the morning of April 3, 2020, in the Southern District of Florida. Rule 5 mandates that:

> If the defendant was arrested in a district other than where the offense was allegedly committed, the initial appearance must be:

(A) in the district of arrest; or
(B) in an adjacent district if:
(i) the appearance can occur more promptly there; or
(ii) the offense was allegedly committed there and the
initial appearance will occur on the day of arrest.

Fed. R. Crim. P. 5(c)(2). Thus, the plain language of the statute requires the Defendants to be seen for their first appearance in the district of their arrest, which was the Southern District of Florida. This was not done.

Alternatively, under Rule 5, the Defendants could be seen in an adjacent district, *i.e.*, the Middle District of Florida, but only if that appearance "can occur more promptly there."[10] Fed. R. Crim. P. 5(c)(2)(B)(i). This was not done. The Defendants were not seen until the following Monday, April 6, 2020, because that is what was intended.

The Court finds the Magistrate Judge's factual findings are supported by the evidence. The evidence shows the Defendants arrived at Port Everglades around 8:00 a.m. on the morning of Friday April 3, 2020. The courthouses in the Southern District of Florida and the Middle District of Florida were open and operational during normal businesses hours on Friday, April 3, 2020. The van transport left Port Everglades by no later than 9:45 a.m. The Ft. Lauderdale federal courthouse is 4.2 miles from Port

---

[10] Even if the Government takes the position that the offense occurred in the Middle District of Florida because that is where the indictment issued, Rule 5 requires the initial appearance to occur on the day of arrest. *See* Fed. R. Crim. P. 5(c)(2)(B)(ii) (where defendant arrested in district other than where the offense allegedly occurred, initial appearance must be in an adjacent district if "the offense was allegedly committed there and the initial appearance *will occur on the day of arrest*") (emphasis added). The initial appearance did not occur on the day of arrest in any district.

Everglades, and the Miami federal courthouse is 29.1 miles from Port Everglades. The Ft. Lauderdale and Miami courthouses are both located in the Southern District of Florida, the District in which Arboleda Quinones was arrested. But no effort was made to present Defendant to a magistrate judge in the district of arrest.

The plain language of Rule 5 requires the Defendant to be presented for a first appearance in the district of arrest unless he can be seen in an adjacent district sooner. Fed. R. Crim P. 5(c)(2). While the defendant generally bears the burden of showing the delay was unnecessary, Rule 5 puts the onus on the Government to timely present defendants to a magistrate judge without unnecessary delay. Here, the Government offers no explanation as to why a first appearance could not have occurred in one of those two courthouses in the Southern District. Further, the Defendant was taken to Fort Myers HSI offices, but no effort was made to take the Defendants to the Fort Myers courthouse. The Government stipulated that the Fort Myers courthouse was open that day and conducting in-person hearings. Doc. 274 at 112. There was no evidence of any effort to conduct a first appearance in Fort Myers. Nor was there any evidence to coordinate a videoconference first appearance either with a magistrate judge in Fort Myers or Tampa from the HSI offices.

Finally, the evidence supports that the Tampa federal courthouse was open and operational that day. Although the Government argues that the email with the CRD reflects the magistrate judge's signaling of availability on Monday April 6, the Court cannot say when the CRD was first advised of these Defendants being brought into the United States under the MDLEA. At a minimum, a week prior it was apparent to

all involved that MDLEA detainees were coming to Tampa. The Government had a plan in place, and the plan specifically provided that Defendants would not be seen until the following Monday. The Government fails to show how this comports with the requirements of Rule 5. Thus, the Court finds the Magistrate Judge's findings that the delay in presentment was unreasonable and unnecessary is supported by the record.

b.    Transport of Defendants to MDFL for processing

The Court agrees in principle with the Government that it presented evidence as to why processing should occur in Tampa rather than in the Southern District of Florida. Specifically, the Government proffered testimony that the number of people needed to complete the processing was six to eight and those individuals were experienced MDLEA personnel located in Seminole, Florida at the PanEx facility. However, the Government's argument misses the mark as it still fails to show why a first appearance could not have been conducted via video conference earlier in the day, why processing had to occur before a first appearance when at least some of the processing paperwork had already been completed by the morning of April 3, or why the first appearance could not have occurred in Tampa after the Defendants were processed at the PanEx facility, particularly where the plans were being orchestrated weeks in advance.

Alternatively, the Government urges processing of the Defendants in the Middle District of Florida was necessary for security, safety, and efficiency considerations in the face of the global pandemic. The Government urges the delay

was necessary as courts recognize that delays in processing due to coordination of agencies, booking procedures, shortage of law enforcement, and heavy caseloads are found to be both reasonable and necessary. Moreover, given that the COVID-19 pandemic has impacted all facets of court operations, the Government submits any COVID-related delays are reasonable.[11] The Government points to the fact that the Pinellas County Jail's willingness to accept these Defendants was an important factor in the analysis. But even if it was the case that Pinellas was the only facility willing to take these detainees, it still does not show how or why a 15-minute first appearance in the Tampa, Fort Myers, Ft. Lauderdale or Miami courthouses could not have occurred either in-person or by videoconference if the Government was trying to uphold the requirements of Rule 5.

Even if the Government established that it was more efficient to process the Defendants within the Tampa Division of the MDFL rather than the Southern District of Florida, there is no evidence to explain why the first appearances could not have occurred before a magistrate judge in Tampa on April 3, either before or after processing, particularly where, as here, the PanEx personnel planned in advance for Defendants' arrival into the District on April 3. *See* Doc. 259-1 ("below listed detainees

---

[11] The Government relies on several cases wherein courts recognize the impact of COVID-19 on the court's operations and resulting delays. Doc. 277 at 10 (citing *United States v. Taborda-Reales*, Crim No. 20-342, 2021 WL 1565538 (D.P.R. Apr. 20, 2021) and *United States v. Ugarte*, No. 2:20-MJ-452, 2020 WL 3895296, at *2 (D. Utah July 10, 2020). Of note, those cases sought dismissal of the indictment or the defendant's release and did not involve the suppression of evidence.

will be arriving at PANEX this Friday, April 3, 2020, and will be booked into Pinellas County jail for Monday initial appearances").[12]

D.    *Suppression of Statement*

In *Mallory v. United States*, the Supreme Court explains that the purpose of Rule 5(a) is to prevent oppressive police interrogations and other "third-degree" tactics before bringing the accused in front of an officer of the court. 354 U.S. 449, 451-54 (1957). The remedy for a Rule 5(a) violation is exclusion of the evidence gained during the delay using such tactics. *See McNabb v. United States*, 318 U.S. 332, 345 (1943) ("[T]o permit such evidence to be made the basis of a conviction in the federal courts would stultify the policy which Congress has enacted into law."); *United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973) ("A violation of [Rule 5(a)] renders the evidence obtained *per se* inadmissible.")

However, under 18 U.S.C. § 3501(c), a confession "shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention. 18 U.S.C. § 3501(c). The Magistrate Judge found the safe harbor period of § 3501(c) inapplicable here, and this finding is supported by the record. Notwithstanding the

---

[12] Although Agent Mangiocco's email advises the jail transport company (G4) that the Defendants should be ready for transport from PanEx at 1800-1900 hours, the evidence from the October 20 hearing showed Arboleda Quinones's interview was the last interview and concluded around 3:15 p.m. Doc. 124 at 202.

Government referencing the safe harbor provision in its objection, the Government offers no evidence that the Defendant's statement was given within the six hours immediately following his arrest. Thus, the safe harbor provision does not provide any reprieve for the troublesome delay.

In its objection, the Government argues that given the language of § 3501(c) there must be a finding of unreasonableness in the delay before the Court can suppress the Defendant's statement. Doc. 277 at 18. In *Corley v. United States*, 556 U.S. 303 (2009), the Court held, "[i]f the confession occurred before presentment and beyond six hours, . . . the court must decide whether delaying that long was unreasonable or unnecessary . . . and if it was, the confession is to be suppressed." Here, the Magistrate Judge specifically found that the delay was both unreasonable and unnecessary. Doc. 269 at 30. And, as discussed above, these findings are supported by the evidence.

## IV.   CONCLUSION

For the reasons discussed above, the Court finds that the Magistrate Judge's factual findings and analysis are supported by the evidence. The Court rejects the Government's argument that its delay in presenting the Defendants to a magistrate judge satisfied the requirements of Rule 5 on the facts of this case. Further, based upon the totality of the circumstances and the evidence presented, the Court agrees with the Magistrate Judge's conclusion that the delay was unreasonable and unnecessary and finds it to be supported by the record.

After careful consideration of the Report and Recommendation of the Magistrate Judge and the Objections thereto, in conjunction with an independent *de*

*novo* examination of the file, the Court concludes that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects, and the second motion to suppress statements will be granted as set forth herein. Accordingly, it is now

> **ORDERED:**

(1)     The Government's Objections (Doc. 277) are overruled.

(2)     The Report and Recommendation of the Magistrate Judge (Doc. 269) is adopted, confirmed, and approved in all respects and is made a part of this Order for all purposes, including appellate review.

(3)     Defendant Arboleda Quinones's Motion for Release from Custody or, in the alternative, to Suppress all Statements Obtained from Him for Unconstitutional Treatment and/or Unconstitutional Suspension of the writ of Habeas Corpus and/or Violation of Federal Rule of Criminal Procedure 5; Motion to Exclude and/or Suppress the State Department Certification as its Use Under 46 U.S.C. 70502(c)(2)(B) Impermissibly and Unconstitutionally Violates the Separation of Powers Doctrine and/or is Fatally Inconsistent with 46 U.S.C. 70504(a) and this Court's Supervisory Power (Doc. 167) ("Second Motion to Suppress") is **GRANTED in part** to the extent that Arboleda Quinones' statements to Special Agent Luis C. Lima on April 3, 2020, are suppressed due to the Government's violation of Federal Rule of Criminal Procedure 5. In all other respects, the motion (Doc. 167) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on October 6, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies:
Counsel of Record
Unrepresented parties, if any
United States Magistrate Judge